BARBARA LaWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION
Lesley M. Lukach, SBN 014527
Kelli L. Olson, SBN: 029181
Deputy County Attorneys
32 North Stone Avenue, Suite 2100
Tucson, Arizona  85701
Telephone: 520-740-5750
Lesley.Lukach@pcao.pima.gov
Kelli.Olson@pcao.pima.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Cesare, *et al.*, | No. CIV-14-2514-TUC-CKJ (EJM) |
| Plaintiffs, | **MOTION TO DISMISS FIRST AMENDED COMPLAINT IN PART** |
| vs. | (ORAL ARGUMENT REQUESTED) |
| Pima County, *et al.*, | |
| Defendants. | |

BARBARA LaWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

        Defendants Pima County, Pima County Board of Supervisors, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell (collectively "County") respectfully request that this Court dismiss Counts One, Two, Three, Four, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen of Plaintiffs' First Amended Complaint. Because Plaintiffs lack standing as to some counts, those should be dismissed under Rule 12(b)(1), Fed R. Civ. P.  All but one of the remaining claims should be dismissed under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief may be granted.  Although the County also denies any wrongdoing related to Plaintiffs' First Amendment claim, that claim is not addressed in this Motion because the County must

1  assume for purposes of this Motion that all of Plaintiffs allegations are true.  This Motion

2  is supported by the following memorandum of points and authorities.

**Memorandum of Points and Authorities**

3

4  **I.  Background**

5        Plaintiffs' First Amended Complaint centers on actions relating to the Star Valley

6  development: a "master-planned 3000-lot residential development in Pima County."

7  (1AC ¶ 25.[1])  The master developer of that property is an entity named USH/SVA Star

8  Valley, LLC (the LLC). (1AC ¶¶ 23, 25.)  The LLC is also the beneficiary of the trust

9  that holds legal title to the property.   (*See* Exhibit 1, Verified Complaint in *Stewart Title*

10 *& Trust of Tucson and USH/SVA Star Valley, LLC v. Pima County Board of Supervisors,*

11 *et al.*, C20144304, Superior Court of the State of Arizona, Pima County (filed Aug. 8,

12 2014) at ¶¶ 2-3; 1AC ¶ 109.)  For purposes of this motion, both the trust and the LLC will

13 be collectively referred to as "the LLC." The Plaintiffs in this case are Joseph Cesare and

14 S.V.A. Corporation (SVA).  Plaintiffs allege that Joseph Cesare is a shareholder, director

15 and vice-president of SVA. (1AC ¶ 22.)  Plaintiffs also allege SVA is one member of the

16 LLC, along with Lennar Home Builders. (1AC ¶ 24.)  Neither Lennar Home Builders nor

17 the LLC are party to this action.  However, the LLC is a party to a separate action filed in

18 state court that arises out of the same series of transactions alleged here. (*See* Exhibit 1,

19 Verified Complaint in C20144304.)

20        Plaintiffs allege that, in 2011, 2012, and 2013, Pima County received complaints

21 from Star Valley residents regarding the need for an additional access road to serve the

22 development and maintenance of a trail system the LLC had built adjacent to the

23 development. (1AC ¶¶ 55, 56.)  Plaintiffs allege the County has denied responsibility for

24 trail maintenance and construction of an additional access road and has insisted that Mr.

25

26

---

[1]Citations to "IAC" throughout this Motion refer to Plaintiffs' First Amended Complaint.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1   Cesare or the master developer is responsible for the improvements.  (1AC ¶¶ 59, 67.)

2   Plaintiffs rely upon a series of letters written by County employees regarding the master

3   developer's responsibility to construct or fund the improvements. (e.g. 1AC ¶¶ 60, 84, 98,

4   111.)  Plaintiffs focus on a letter Defendant Carla Blackwell wrote on April 9, 2014,

5   addressed to Joseph Cesare as president of the Star Valley homeowners' association

6   (HOA), Jeffrey Cesare as vice president of the HOA, and the president of the HOA's

7   management company. (Complaint ¶¶ 24, 90-97; Exhibit 2.)  Plaintiffs did not attach a

8   copy of the April 9 letter to their First Amended Complaint, but because the First

9   Amended Complaint relies upon the letter (*see* Complaint ¶¶ 90-97, 146-149, and 152-

10  158) this Court may consider it (and the other letters relied upon in the First Amended

11  Complaint) without converting this motion into one for summary judgment. *See Harris v.*

12  *County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).  This letter (like Exhibits 3

13  and 4) also included and referred to multiple attachments, which the Court may consider

14  as part of the complete document.  In the April 9 letter, Ms. Blackwell summarized the

15  County's responses to several inquiries from Star Valley residents, including: that the

16  County could not accept responsibility for the maintenance of the trails (as communicated

17  to Mr. Cesare in 2009), that construction of the access road extension was the LLC's

18  responsibility as a condition of the development's 2002 master block plat and

19  transportation implementation plan, and that impact fees are used to pay for regional

20  roadways rather than roads that directly serve the development. (Exhibit 2 pp. 1-2, 4.)

21      The First Amended Complaint alleges the County has put Star Valley blocks 4, 7,

22  and 8 on hold for further releases until a new agreement is reached regarding the disputed

23  improvements, and has "threatened" to re-plat the development if no agreement is

24  reached. (1AC ¶¶ 97, 109.)  Plaintiffs rely in part on a "notice of default and intent to re-

25  plat" that was sent on July 10, 2014. (Complaint ¶ 110.)  The notice explained that the

26  County had decided to initiate its option to re-plat blocks 4, 7, and 8 of Star Valley and

outlined the factors that had led to the decision, including: (1) failure to complete subdivision improvements within the time allowed by the related assurance agreements; (2) transfer of title of blocks 4, 7, and 8 without Pima County authorization in violation of assurance agreements; (3) failure to comply with transportation plans and rezoning conditions (including the previously discussed improvements); and (4) changes in surrounding conditions. (Exhibit 4 pp. 1-2.) The notice provided that the owner was allowed to cure the default with new agreements that would "fulfill the obligations and ensure performance," at which point the County could cease the re-platting process. (Exhibit 4 p. 2.) As of January 20, 2015, the Board of Supervisors has not re-platted the subdivision. (*See* Exhibit 5, Meeting Minutes, item 10, publicly available at https://pima.legistar.com/Calendar.aspx.) *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.* 499 F.3d 1048, 1052 (9th Cir. 2007) (court may take judicial notice of matters of public record without converting 12(b)(6) motion into one for summary judgment, where facts not subject to reasonable dispute.) Plaintiffs allege the County and Defendant Huckelberry have retaliated against Mr. Cesare by "refusing to settle" the LLC's lawsuit regarding the re-plat of blocks 4, 7, and 8 and responsibility for the offsite improvements. (IAC ¶ 155.) They claim Mr. Cesare's claims in this lawsuit are "unrelated" to that lawsuit and "independent" of the underlying dispute regarding payment for the improvements. (1AC ¶¶ 155, 159.)

## II.   Argument

### A. The Court lacks subject matter jurisdiction over Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen, and Fourteen because Plaintiffs do not have standing to bring claims belonging to the non-party LLC.

#### 1.   Standard Under Rule 12(b)(1).

Rule 12(b)(1) authorizes a motion to dismiss for "lack of subject matter jurisdiction." Whether a party has standing to bring a claim goes to a court's subject matter jurisdiction under Article III's case or controversy requirement. *Lujan v.*

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an

2   essential and unchanging part of the case-or-controversy requirement of Article III.").  To

3   establish standing, a party must allege he has suffered a distinct and palpable injury by

4   showing "'an invasion of a legally protected interest'" that affects him "'in a personal and

5   individual way.'" *Fleck & Assocs., Inc v. Phx*, 471 F.3d 1100, 1104 (9th Cir. 2006),

6   *quoting Lujan*, 504 U.S. at 560 & n.1.

> **2.   Because Plaintiffs allege injuries to the non-party LLC and not to themselves they lack standing to bring the claims for injurious falsehoods, tortious business interference, equal protection, negligence, federal and state RICO, and violation of A.R.S. § 11-1604; allegations of intent to target Plaintiffs do not confer standing.**

11         The general rule in Arizona and federal law is that a shareholder or member

12   cannot bring an action alleging individual injury resulting from a wrong to the

13   corporation or limited liability company.  Stockholders generally may not bring an action

14   individually where "'the gravamen of the complaint is injury to the corporation.'" *Albers*

15   *v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 52, ¶ 17, 31 P.3d 821, 826 (App. 2001),

16   *quoting Funk v. Spalding*, 74 Ariz. 219, 223, 246 P.2d 184, 186 (1952); *RK Ventures, Inc.*

17   *v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) (same).  The court in *Funk* further

18   explained that "[o]ne of the primary purposes of bringing the action in the corporate

19   name is to prevent a multiplicity of actions." 74 Ariz. at 225, 246 P.2d at 188.  The rule

20   also protects the entity that has been directly damaged and has "the sole right as a

21   separate legal entity to maintain such action" unless it falls within an exception to the

22   rule. *Id.*  The same principle and rule applies to limited liability companies, which may

23   sue and be sued in Arizona.  *See Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th

24   Cir. 1987) (characterization of claim as direct or derivative generally question of state

25   law).  Section 29-831, A.R.S., provides that a member may only bring an action in the

26   right of an LLC if it meets five requirements, including the wrongful refusal or failure of

the LLC to sue in its own right; Plaintiffs have not represented that they are bringing an action pursuant to § 29-831 or that they have satisfied those requirements.  A.R.S. § 29-610(A)(1).

In an apparent attempt to establish standing absent individual injury, Plaintiffs repeatedly allege that Defendants' conduct "was aimed at Mr. Cesare personally, and the damage suffered by USH/SVA, as an entity, is collateral to the damage suffered by Mr. Cesare."  (1AC ¶¶ 222, 237, 371, 374, 395, 413, 431, 432.)  Even assuming Plaintiffs' conclusory allegations are true, they do not change the standing analysis.  The Arizona Supreme Court in *Hidalgo v. McCauley* reiterated that an entity has the sole right to bring an action for its injuries regardless of whether the injurious conduct was targeted toward one member of the entity. 50 Ariz. 178, 183, 70 P.2d 443, 445 (1937).  The Court explicitly rejected an argument that a shareholder has a personal right of action "'where a tort-feasor is animated by malice toward [that] particular shareholder.'" *Id.*, quoting *Green v. Victor Talking Mach. Co.*, 24 F.2d 378, 381 (2d Cir. 1928); *see also Sax*, 809 F.2d at 614 ("Even if the defendants depleted [the corporate] assets with the sole purpose of decreasing the value of Sax's stock and destroying his return on his investment, the action would nonetheless be derivative.").  This is consistent with the general rule for establishing a direct claim, which requires a distinct *injury*—not a distinct motive.[2]

The policy reasons for barring member actions on behalf of an LLC are particularly prominent in this case.  *See Funk*, 74 Ariz. at 225, 246 P.2d at 188.  Here there is not only a risk, but a certainty, of a multiplicity of actions because the LLC has

---

[2]Plaintiffs also allege that the County targeted blocks owned by the LLC, but not blocks owned by Lennar separately.  (IAC ¶¶ 109-110.)  This allegation does not affect the standing analysis directly because it does not contend or give rise to any reasonable inference that Plaintiffs were harmed more than other members of the LLC by the alleged injury to the affected blocks.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1 already brought an action based on the same injuries alleged by one of its members here.

2 (*See* Exhibit 1, Verified Complaint in C20144304.)

3      The following sub-sections apply the above principles to the specific allegations in

4 each count that Defendants challenge on the basis of standing:

5      **Count Three, Injurious Falsehoods**

6      Count Three alleges that Defendants have published "disparaging falsehoods

7 regarding Mr. Cesare and regarding Mr. Cesare's business calculated to prevent others

8 from dealing with him[,] . . . his business" or "his business entities." (Complaint ¶¶ 214,

9 218.)  The only conduct alleged is the publication of the April 9, 2014 letter to members

10 of the Star Valley HOA regarding resident complaints.[3] (Complaint ¶ 215.)  And the only

11 injury identified is that residents, as a result, "planned to slow sales within the Star Valley

12 development." (Complaint ¶ 215.)  The gravamen of this count is that the statements

13 harmed Star Valley sales, and only the non-party LLC as the owner of the lots in Star

14 Valley can recover damages for lost sales.

15      **Count Four, Tortious Business Interference**

16      Count Four alleges "interfere[nce] with Plaintiffs' existing and prospective

17 contractual relations" in the form of a contract "with LGI [Inc.] for the sale of 572 lots at

18 Star Valley." (Complaint ¶¶ 221, 223.)  Plaintiffs repeat the allegations discussed above

19 in Count Three, alleging the April 9, 2014 letter in response to resident complaints

20 resulted in residents talking about a plan to "slow sales" in Star Valley.  (e.g., 1AC ¶¶

21 230-232).  They then allege that Defendants "induced or caused the termination of at

22 least one existing contractual relationship of one of Plaintiffs' entities," presumably

23 referring to the LLC's contract with LGI.  (1AC ¶ 234.)  The Complaint states that the

24 contract was between the LLC and LGI Inc. (Complaint ¶¶ 131, 133.)  Although the

25

26 [3]The only other factual allegation of misconduct is outside the applicable one-year statute of limitations. *See* A.R.S. § 12-821. (Complaint ¶ 216.)

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL.
PIMA COUNTY ATTORNEY
CIVIL DIVISION

Complaint does not allege either Plaintiff was a party to the contract, Plaintiffs allege "Mr. Cesare, in his personal capacity and through his business entities, also has a business expectancy of selling the remainder of the Star Valley development." (Complaint ¶ 226.)  The only reasonable inference to be drawn from the allegations in the Complaint is that his expectancy consists entirely of SVA's ownership interest in the LLC.  The Complaint explains that "[b]ecause of Plaintiff SVA's 50% ownership of USH/SVA, SVA personally lost 50% of the profits of the sale to LGI" and "has suffered damages equaling 50% of any lost USH/SVA profits, plus future losses of USH/SVA." (Complaint ¶¶ 135, 136.)  The essence of this claim is that the LLC was injured by the termination of its contract with LGI, and only the non-party LLC can recover if it was damaged because LGI withdrew from that contract.[4]

**Counts Six and Eight, Equal Protection**

In their equal protection claims, Plaintiffs allege that blocks of land owned by the LLC were treated differently than blocks of land owned by Lennar and "[o]ther developers."  (1AC ¶¶ 282-284, 287, 322-324, 329; 1AC ¶¶ 109 (LLC owns blocks 4, 7, 8); *see also* Exhibit 1, Verified Complaint in C20144304, at ¶¶ 2-3.)  Plaintiffs characterize the distinction between the LLC blocks and other blocks as targeting "blocks in which Mr. Cesare and SVA have an interest."  (1AC ¶¶ 277-279.)  However, this does not change the reality that the alleged similarly situated owners are the LLC and other developers.  As discussed above, the targeting of a particular LLC member does not affect the standing analysis, which is focused on injury rather than intent.  *See Hidalgo*, 50 Ariz. at 183, 70 P.2d at 445; *Sax*, 809 F.2d at 614.  And Plaintiffs do not allege any

---

[4]The First Amended Complaint added an allegation regarding the relationship between the members of the LLC, claiming that Lennar has "threatened" to terminate the LLC or sue Plaintiffs.  (1AC ¶ 239.)  However, there is no allegation that either of these things have happened.  Moreover, it does not change the core of the claim, which continues to be harm to sales of lots at Star Valley.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

facts that would show Mr. Cesare or SVA will be affected any differently than other members by the alleged actions regarding blocks 4, 7, and 8.[5]  Assuming the LLC-owned blocks are being treated differently, and assuming those facts would support an equal protection claim (a proposition that is discussed further below), any cause of action would belong to the LLC.

**Count Ten, Negligence**

Count Ten alleges breach of three duties: (1) a duty to provide only truthful statements to the public regarding Mr. Cesare; (2) a duty not to withhold building permits from the Star Valley development absent statutory authority; and (3) a duty to not "attempt" to abandon and re-plat the Star Valley development without statutory authority and good cause. (1AC ¶¶ 367, 370, and 373.)  The first allegation identifies a distinct individual injury (that theory is addressed separately below).  However, the second and third alleged duties would be owed to the LLC as the developer and beneficial owner of the Star Valley development, and Plaintiffs do not have standing to raise the LLC's claims of alleged breach of any such alleged duty.

**Counts Twelve and Thirteen, Federal and State RICO**

The gravamen of Plaintiffs' two RICO claims (Counts Twelve and Thirteen) is injury to the LLC.  Regardless of whether this Court applies federal law or state law

---

[5]Although Counts Six and Eight incorporate all preceding allegations, the specific allegations omit any reference to individual retaliation.  This appears to have been intentional, perhaps because numerous Circuit Courts of Appeals have concluded that retaliation claims do not implicate the Equal Protection Clause.  *See, e.g.*, *Thomas v. Independence Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004); *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992); *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990).

regarding standing for the federal RICO claim,[6] the general rule is the same. Shareholders or members typically lack standing to assert RICO claims where their injury derives from the corporation's or partnership's harm. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640-41 (9th Cir. 1988); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1036-37 (9th Cir. 2010) (applying general corporate rule to LLC).  To establish individual standing, a shareholder or member of a limited liability company must show (1) a distinct injury from the harm suffered by other shareholders or (2) a special duty, such as a contractual duty, between the shareholder and the defendant. *See Sparling*, 864 F.2d at 640-41.

Plaintiffs allege that Defendants have withheld building permits for the Star Valley development and have threatened to "abandon and re-plat" the development, in an effort to "force Mr. Cesare and his businesses to pay for County infrastructure." (1AC ¶¶ 400-402, 416-418.)  Although some earlier correspondence may have been addressed to and from Mr. Cesare and another business entity (*see* 1AC Complaint ¶ 77), the most recent correspondence relied upon in the First Amended Complaint clarifies that it is the LLC that is in default and it is the "property owner" that can cure the default by fulfilling its obligations. (Exhibit 4 pp. 1, 2; *see also, e.g.*, 1AC ¶¶ 84, 87-90, 97 alleging demands on "developer"; denying developer responsible.)  Even assuming Plaintiffs have been affected by the County's efforts to hold the LLC accountable for its default, any effect is entirely by virtue of SVA's status as a member of the LLC and Mr. Cesare's even more remote interest as a shareholder in SVA.  The LLC alone has a right of action for any damage incurred.

---

[6]Federal courts have differed on whether to apply state or federal law to determine whether a shareholder has standing to assert a RICO claim.  *See In re Sunrise Sec. Litigation*, 916 F.2d 874, 882 & n.9 (3d Cir. 1990) (collecting cases).

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

**Count Fourteen, Violation of A.R.S. § 11-1604**

Count Fourteen does not specify an injury, but the only actions alleged are, once again, a "decision to with[h]old building permits" for the Star Valley development and "making the decision to 'abandon and re-plat' Star Valley." (Complaint ¶¶ 431-432.) Each alleged action was taken or threatened against the LLC as the master developer and beneficial owner of the Star Valley development, and any resulting cause of action belongs solely to the LLC.

**B. This Court lacks subject matter jurisdiction over any claim based on actual re-platting of the Star Valley development because the claims are unripe.**

The ripeness doctrine ensures that federal courts do not adjudicate matters "when the issues are not sufficiently concrete for judicial resolution." *W. Oil & Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1290 (9th Cir. 1990). When facts yet to develop could change the nature of the dispute, or "shape the issues for review," then the dispute is not fit for federal judicial resolution. *Id.* at 1291. Plaintiffs repeatedly allege they have been injured by actions or steps toward re-platting the Star Valley development. (*E.g.* 1AC ¶¶ 407, 418, 423, 432.) However, as reflected in the January 20, 2015 Board of Supervisors' Meeting Minutes the Board has not yet re-platted Star Valley and the staff recommendation to re-plat has been removed from the Board's agenda. (Exhibit 5, item 10, publicly available at http://onbase.pima.gov/publicaccess/CL/datasourcetemplate.aspx.) As explained above, any cause of action arising from re-platting would belong to the LLC. Additionally, to the extent any of Plaintiffs claims are based on injury from re-platting, rather than the "threat" of re-platting (as alleged elsewhere), those claims are unripe.

Barbara LaWall.
Pima County Attorney
Civil Division

**C.  Counts One, Two, Three (in the alternative), Six (in the alternative), Seven, Eight (in the alternative), Nine, Ten (in remaining part), Eleven, and Fifteen[7] "fail[] to state a claim upon which relief can be granted" and should be dismissed under to Rule 12(b)(6).**

**1.  Standard Under Rule 12(b)(6).**

Rule 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) can be based on (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Claims are facially plausible when they include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Nor is it sufficient to plead facts that allow the court only to infer "the mere possibility of misconduct."  *Id.* at 679.

Plaintiffs bring both federal and Arizona claims. Federal law governs the applicable procedure and the federal claims' substance. *See Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Arizona law governs the substance of the Arizona claims. *See Erie R.R.*, 304 U.S. at 78; *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

---

[7]Because Plaintiffs lack standing as to Counts Four, Twelve, Thirteen, and Fourteen, Defendants do not address in this motion whether those claims otherwise would also fail to state a claim under Rule 12(b)(6).  Defendants do not intend to waive such an argument in a future motion if this Court concludes that Plaintiffs have standing on any of those claims.

### 2. Plaintiffs have failed to state a defamation claim in Count One because they allege insufficient objective facts to plausibly infer a knowing or recklessly false publication.

Plaintiffs allege Sharon Bronson, Chuck Huckelberry, and Carla Blackwell defamed Joseph Cesare when they acted "in concert" to write the letter Carla Blackwell signed on April 9, 2014, addressed to officers and management of the Star Valley HOA including Joseph Cesare. (1AC ¶¶ 11-114, 184-186; Exhibit 1 p.1.)  Plaintiffs allege Ms. Blackwell copied the letter to "several members of the HOA," who then disseminated it to "approximately 1400 members of the HOA." (1AC ¶¶ 115, 117., )  Plaintiffs allege that "[e]ach and every one of [the] allegations and insinuations [in the letter] regarding Mr. Cesare is false."  (1AC ¶ 189.)  Plaintiffs further allege the "County has also defamed Mr. Cesare through its other actions and public statements regarding Mr. Cesare alleged in this complaint." (1AC ¶ 203.)  Defendants have been unable to identify any other specific allegations of defamatory communications elsewhere in the Complaint that would fall within the one-year statute of limitations for this claim. *See* A.R.S. § 12-821 (actions against public entity or employee must be brought within one year after cause of action accrues). (E.g., 1AC ¶¶ 67, 71, 72 (referring to communications in May 2013).)

An actor is liable for defamation "'only if he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.'" *Dube v. Likins*, 216 Ariz. 406, ¶ 35, 167 P.3d 93, 104 (App. 2007).  However, Ms. Blackwell's statements as a public official are also protected by qualified immunity. *See Chamberlain v. Mathis*, 151 Ariz. 551, 559, 729 P.2d 905, 913 (1986).  Therefore, Plaintiffs must plead facts that, if true, state a plausible claim based on *objective* proof that Ms. Blackwell knew her statements were false or acted in reckless disregard of the truth. *Id.*  Other conditional privileges also apply a knowing or reckless standard to Ms. Blackwell's response to the residents' concerns; they balance Mr. Cesare's reputational interest against the residents' interest in receiving a

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1    response to their inquiries. *See* Restatement (Second) of Torts § 594 & cmts. b, k

2    (information affecting and lawfully protecting sufficiently important interest of the

3    publisher, including defending own reputation); Restatement (Second) of Torts § 595

4    (information affecting important interest of recipient, *especially where publication is*

5    *made in response to a request*).  Arizona's qualified immunity law makes clear that

6    allegations of subjective malice are insufficient and the "reasonableness of [Blackwell]'s

7    conduct should be measured by an objective standard." *Chamberlain*, 151 Ariz. at 558,

8    560, 729 P.2d at 912, 914 (cannot force public official to engage in discovery by "merely

9    alleging malice").

10          Plaintiffs include a conclusory allegation that Carla Blackwell acted with "actual

11    malice," "knew or should have known" her statements were false, or "acted with reckless

12    disregard as to the truth or falsity" of the statements. (1AC ¶¶ 199-200.)  However, they

13    fail to plead facts that would plausibly support their legal conclusion.  The only factual

14    allegations relevant to malice are a list of conclusory allegations that each "allegation" in

15    the April 9 letter was false. (1AC ¶¶ 189-196.)  But the text of the letter itself renders

16    unreasonable any objective inference of the required malicious intent.  The April 9 letter

17    clarifies that it is in response to residents' inquiries and proceeds on the premise that

18    those comments are accurate. (E.g., Exhibit 2 p. 1 "[t]he comments as reported . . .

19    represent a lack of fiduciary responsibility.")  The letter then quotes five resident

20    complaints and responds to each.  It cites to and attaches documents that provide the

21    reasonable basis for each response, including: conditions from the development's specific

22    plan regarding trail maintenance and relevant communication and maps from 2009; 2002

23    agreements through the master block plat and transportation implementation plan

24    regarding construction of roads to serve the development; and an explanation of the

25    proper use of impact fees for major arterial roads, along with a summary of impact fee

26    collection and expenditures and over 100 pages of supporting data. (Exhibit 2.)  Other

communications relied upon in Plaintiffs' complaint demonstrate that Plaintiffs are in possession of additional documents that provide a reasonable basis for Ms. Blackwell's statements, including documents referred to in the April 9 letter. (*See* Exhibit 3 attachments, relied upon at 1AC ¶¶ 94-98.)  This Court need not resolve any disputed fact regarding actual responsibility for the improvements to conclude that, as a matter of law, the First Amended Complaint does not state a plausible claim that Ms. Blackwell's statements regarding the County's position on the topic were objectively knowingly or recklessly false.  Although Plaintiffs disagree with Ms. Blackwell's conclusions about who was responsible for the relevant improvements, alleging that Ms. Blackwell "could have come to a different conclusion than the one [she] reached is not enough to overcome the defense of qualified immunity." *Carroll v. Robinson*, 178 Ariz. 453, 458, 874 P.2d 1010, 1015 (App. 1994).  Count One must be dismissed.

> **3.   Count Two fails to state a claim for false light invasion of privacy because the publicized matter concerned the life of a person in whom the recipients had a rightful interest and the information communicated was of public benefit.**

Count Two alleges that all of the previously discussed "allegations, actions and insinuations" placed Joseph Cesare in a false light and attributed false characteristics to him.[8] (1AC ¶¶ 206-207.)  Arizona recognizes the action of false light invasion of privacy when a defendant "knowingly or recklessly publishe[s] false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 947 P.2d 846, 854 (App. 1997).  The publicity must involve a "'major misrepresentation'" of character, history, activities or beliefs. *Reynolds v.*

---

[8]Defendants note that, although a plaintiff may proceed on both defamation and false light theories, there can be only one recovery for a single instance of publicity.  A.R.S. § 12-651 (no person shall have more than one cause of action for damages for any tort founded upon a single publication). And Plaintiffs' false light claim does not allege any public statements in addition to those relied upon in their defamation claim.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1  *Reynolds*, 231 Ariz. 313, ¶ 14, 294 P.3d 151, 156 (App. 2013), *quoting* Restatement

2  (Second) of Torts § 652E, cmt. c.

3        First, as discussed in relation to the defamation claim, Plaintiffs plead insufficient

4  facts to plausibly infer that the statements in Carla Blackwell's letter were knowingly

5  false or made with reckless disregard as to falsity or false innuendo.  It is not only the

6  absence of well-pleaded facts, but the content of the alleged publicity—which is simply

7  not susceptible to the otherwise unsupported allegation regarding knowing or reckless

8  conduct—that renders unreasonable any inference or conclusory allegation of malice.

9        But there is an additional reason why this particular count must be dismissed.  The

10  tort of false light invasion of privacy, unlike defamation, is an action to protect a person's

11  interest in privacy. *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d

12  781, 787 (1989).  And Arizona law provides that privacy rights are "absent or limited 'in

13  connection with the life of a person in whom the public has a rightful interest, [or] where

14  the information would be of public benefit.'" *Id.* at 343, 783 P.2d at 789.  In *Reed v. Real

15  Detective Publ'g Co.*, 63 Ariz. 294, 304, 162 P.2d 133, 138 (1945) the Arizona Supreme

16  Court explained that there is no action arising out of the doctrine of privacy where:

17              there has been consent to publication, or where the plaintiff
              has become a public character, and thereby waived his right
18              to privacy, nor in the ordinary dissemination of news and
              events, nor in connection with the life of a person in whom
19              the public has a rightful interest, nor where the information
              would be of public benefit.
20

21        Although the First Amended Complaint alleges Defendants have misrepresented

22  Mr. Cesare's "character, history, and activities," (1AC ¶ 207), the only publicity

23  regarding Joseph Cesare alleged (and within the one-year statute of limitations) is the

24  April 9, 2014 letter concerning his official duties as a board member and officer of the

25  Star Valley HOA. (Exhibit 2.)  The letter explicitly acknowledged that it took residents'

26  comments at face value, quoted from those comments, and addressed each in turn.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL.
PIMA COUNTY ATTORNEY
CIVIL DIVISION

(Exhibit 2 pp. 1-3.)  The introductory and closing comments are also expressly and repeatedly limited to Mr. Cesare's responsibilities as a Board member and officer of the Star Valley HOA and limited to his (and others') professional obligations to Star Valley residents. (Exhibit 2 pp. 1, 3.)  Mr. Cesare has no right of privacy in withholding information from the residents about how he executes his official duties in relation to the development.  The residents of Star Valley have a rightful interest in that information, and the County has a responsibility to respond to its constituents with information that is of public benefit.  The alleged publicity, taken as true, is not actionable as a false light invasion of privacy.

### 4.  Assuming Plaintiffs have standing to raise Count Three (Injurious Falsehoods), Plaintiffs have failed to allege sufficient facts regarding objective malice.

As discussed above, Plaintiffs lack standing to raise Count Three because the only stated or reasonably implied injuries belong to the LLC.  However, because the count includes vague references to Mr. Cesare's individual business capacity and other "entities" (1AC ¶ 218), and in an abundance of caution, Defendants also move to dismiss Count Three for failure to state a claim for injurious falsehoods.  The only conduct alleged and within the applicable statute of limitations is the publication of the April 9, 2014 letter from Carla Blackwell to Star Valley residents regarding their inquiries. (1AC ¶ 215.)  Because the alleged statements were made within Ms. Blackwell's discretionary authority to provide information on matters within the scope of her department's functions, she is entitled to qualified immunity. *See Chamberlain*, 151 Ariz. at 555-56, 729 P.2d at 909-10 (director's statements regarding department's accounting functions protected by qualified immunity).  As more fully discussed above in relation to the defamation claim, Plaintiffs plead insufficient facts to plausibly infer, based on an objective standard, that the statements in the April 9 letter were knowingly false or made with reckless disregard as to their truth or falsity. *See id.* at 558, 560, 729 P.2d at 912,

914 (plaintiffs cannot state claim by merely alleging malice); *see also* Restatement (Second) of Torts § 646A (defamation conditional privileges also apply to injurious falsehood).  Therefore, Plaintiffs fail to state a claim for injurious falsehood and any aspects of Count Three that Plaintiffs have standing to bring should be dismissed.

**5.  Counts Six and Eight attempt to state a claim based on discretionary decisions that are not a proper subject for class-of-one equal protection claims; additionally, Plaintiffs have failed to plead sufficient facts identifying a similarly situated class or regarding conceivable legitimate reasons for Defendants' actions.**

The Equal Protection Clause is typically invoked where the government is alleged to have created classifications that treat groups of people differently.  *Engquist v. Oreg. Dept' of Agric.*, 553 U.S. 591, 601 (2008).  However, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class-of-one.'"  *Id.*  For example, in *Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000), a property owner had asked her village to connect her property to the public water supply.  Although the village had required only a 15-foot easement from other property owners seeking access to the water supply, it required Olech to grant a 33-foot easement.  *Id.*  The Court held that her complaint stated a valid equal protection claim.  *Id.* at 565.  The Supreme Court later clarified in *Engquist* that:

> What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed.  There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations—at least not with regard to easement length.

*Engquist*, 553 at 602.

In contrast, *Engquist* held that forms of state action that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1    assessments" are not the proper subject of a "class-of-one claim." *Id.* at 603.  In those

2    circumstances, "treating like individuals differently is an accepted consequence of the

3    discretion granted." *Id.*  The Court used the example of issuing speeding tickets to a

4    particular driver; complaining that the driver has been singled out for no reason is not a

5    proper "class-of-one" claim and would be "incompatible with the discretion inherent in

6    the challenged action." *Id.* at 603-04.  "The practical problem with allowing class-of-one

7    claims to go forward" on discretionary matters, the Court explained, "is not that it will be

8    too easy for plaintiffs to prevail, but that governments will be forced to defend a

9    multitude of such claims in the first place." *Id.* at 608.  And "[t]he Equal Protection

10    Clause does not require '[t]his displacement of managerial discretion by judicial

11    supervision.'" *Id.* at 608-09.

12        In their "class-of-one" equal protection claims in Counts Six and Eight, Plaintiffs

13    challenge the County's decisions to withhold building permits and "institut[e] and

14    pursu[e] . . . the abandonment and re-plat" of Blocks 4, 7, and 8 of Star Valley.  (1AC ¶¶

15    277-288, 320-330.)   They allege the County's "stated objective" for its actions is "to

16    obtain payment from [the LLC] for the construction of off-site improvements," but that

17    "[o]ther developers" including Lennar also owe the County money and haven't had the

18    same actions initiated against their properties.  (1AC ¶¶ 282, 287, 289, 325, 329, 331.)

19    The Notice of Default and Intent to Re-Plat (Notice), upon which the First Amended

20    Complaint relies (1AC  ¶ 141), provides a more comprehensive explanation of the

21    County's actions and process.  (Exhibit 4.)  It also makes clear that the decision whether

22    and how to react to a default of an assurance agreement is the type of discretionary

23    decision that requires managerial discretion and is an improper subject upon which to

24    request judicial supervision via the Equal Protection Clause.

25        As a condition of subdivision plat approval and to comply with A.R.S. § 11-

26    821(C), the sale or transfer of lots in Blocks 4, 7, and 8 is restricted by assurance

BARBARA LaWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1    agreements.  (Exhibit 6, PC Assurance Agreements.)  *See Intri-Plex*, 499 F.3d at 1052

2    (court may take notice of public record.)  The assurance agreements require that the

3    subdivider (the LLC) not transfer lots without Pima County's prior written approval,

4    require the subdivider to construct subdivision improvements within four years, and give

5    the County the option to re-plat all or part of the land if the LLC fails to comply with the

6    terms of the agreement.  (Exhibit 6, PC Assurance Agreements at §§ 2.5, 2.11, and 2.13

7    of each agreement (pp. 2 & 3 (Block 4), 7 & 8 (Block 7), and 12 & 13 (Block 8).)

8            In the Notice of Default and Intent to Re-Plat, the Director of Development

9    Services explains that the LLC is in default of the assurance agreements related to blocks

10   4, 7, and 8, and outlines four primary factors that have influenced the County's decision

11   to initiate action in response to the default.  (Exhibit 4 at pp. 1-2.)  The factors include:

12   (1) failure to complete subdivision improvements within the allotted time; (2) lack of

13   proper assurance agreements and transfer of title of blocks 4, 7, and 8 without County

14   authorization; (3) failure to comply with transportation financing and implementation

15   plan and associated conditions of rezoning; and (4) changes in surrounding conditions.

16   (Exhibit 4 at pp. 1-2.)  Attached to the Notice of Default is a copy of Pima County Board

17   of Supervisors Policy F.53.4, which addresses "the appropriate course of action for

18   extending or renewing an assurance agreement, determining when updates are needed

19   based on changing conditions and re-platting a subdivision based on a default of the

20   assurance agreement."   The background section of that policy explains that how to

21   respond to assurance agreements in default is a subjective determination that relies upon

22   particular circumstances.  For example, it states:

23                   In many instances the failure to construct improvements
                 within the timeframe does not present an immediate problem
24               since none of the subdivision lots have been released from the
                 assurance trust for sale to consumers and the surrounding
25               conditions have not changed.  However, in partially
                 constructed developments where some lots have been
26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> released and sold prior to completion of all infrastructure, as
> well as in older subdivision with outdated traffic and
> hydrology studies or delinquent taxes that could result in lots
> being conveyed out of the assurance trust without necessary
> infrastructure, it is in the best interest of the Count to consider
> exercising its option to re-plat.

The Policy provides that, for agreements in default, "[t]he Development Services Director or designee may, at his sole discretion, initiate the County's option to re-plat or allow the property owner to cure the default . . . ." After the Director initiates the process, the Board of Supervisors will consider a resolution directing staff to commence the re-plat process. As the Policy and the multiple factors in the Notice of Default make clear, in deciding whether and what actions to take in response to agreement defaults, there is no "clear standard against which departures, even for a single plaintiff, c[an] be readily assessed." *See Engquist*, 553 at 602. How to respond to a default is a discretionary decision that calls for individualized assessment and treatment. For that reason, Plaintiffs fail to state an equal protection claim and Counts Six and Eight must be dismissed.

For the same reasons, even if an equal protection claim existed, it would be difficult to identify a similarly situated class of developers or developments. And Plaintiffs' First Amended Complaint fails to do so. Plaintiffs do not even begin the process of identifying comparable developments, which would at a minimum require identifying another development (or block) to which the four factors identified by the County in the Notice of Default would apply. For example, they refer to Star Valley blocks 2, 13, and 18, but do not allege those lots were transferred without authorization or that they remain subject to assurance agreements under which improvements had not been completed. And their reference to "[o]ther" developers or developments is even less helpful in its lack of detail. Even with further factual development, there is simply no clear standard this Court would be able to use to identify similarly situated developments

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

without resorting to the improper role of displacing managerial discretion in favor of "judicial supervision." *See Engquist*, 553 at 608-09.

Additionally, and as an independent basis for dismissal, Plaintiffs fail to allege sufficient facts to meet their burden to "negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001) (under rational basis state need not articulate actual reasons; burden is on plaintiff to negative conceivable reasons), *quoting Heller v. Doe*, 509 U.S. 312, 320 (1993). The United States Supreme Court has clarified that, even if "negative attitudes" or biases accompany an act, "their presence alone does not a constitutional violation make." *Garrett*, 531 U.S. at 367. The Plaintiffs must also show the act is unsubstantiated by permissible factors. *Id.* Although Plaintiffs include conclusory allegations that Defendants' actions were "arbitrary and capricious" and that the County's claim that the LLC owes money for improvements is pretextual, (1AC ¶¶ 290, 292), those conclusions are not plausible in light of Plaintiffs' failure to address or deny the majority of the actual reasons provided for the County's actions—let alone other conceivable and logical factors identified by County policy as relevant to decisions regarding properties in default.

**6. Counts Seven and Nine should be dismissed as duplicative of Plaintiffs' First Amendment retaliation claim; where a particular Amendment provides explicit protection, Plaintiffs may not rely upon the more generalized notion of substantive due process.**

"'As a general matter, the court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). Substantive due process protections are "for the most part . . . accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272.

Although the substantive component of due process protects individuals from the arbitrary exercise of government powers, "it does not follow that . . . the only inquiry mandated by the Constitution is whether, in the view of the Court, the governmental action in question was 'arbitrary.'" *Id.* Instead, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Id.* at 273, *quoting Graham v. Connor*, 490 U.S. 386, 395 (1989); *cf. Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012) (where Fifth Amendment applied to alleged facts, "artful" argument construing claim as substantive due process violation regarding fabricated evidence could not save claim that was not pleaded under specific provision).

In this case generally, and in Counts Seven and Nine specifically, Plaintiffs allege Defendants' wrongful actions were motivated by retaliation for political activities in a 2012 election and retaliation for public "questioning" about the County's use of impact fees.[9] (1AC ¶¶ 309-312.) Plaintiffs allege "[t]he retaliatory acts of [Defendants] were clearly arbitrary and unreasonable" without any legitimate basis. (1AC ¶¶ 297, 339.) They contend the "unlawful conduct alleged herein has effectively deprived Mr. Cesare of the ability to continue to be a property developer in and around Pima County, because his personal reputation has been damaged" and because he believes he will be unable to secure "any permit[s]" in the future, presumably based on an expectation of continued retaliatory animus.[10] (1AC ¶¶ 301, 343.)

---

[9]Plaintiffs also allege Defendants were motivated by Mr. Cesare's refusal to pay for offsite improvements. (1AC ¶¶ 313, 356.) However, answering residents' questions about the developer's responsibilities and noticing the developer of a potential re-plat would not be wrongful, let alone shocking, responses to such a default.

[10]Plaintiffs also allege injury to "property interests" that belong to the LLC, as discussed in the standing section of this Motion, including a reduction in value of property owned

BARBARA LaWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1   What is allegedly "shocking" about Defendants' actions is their intent to retaliate

2   for protected First Amendment activities.  (1AC ¶¶ 309-312, 318, 352-355, 361.)  Absent

3   those allegations, Defendants' purported actions would not be sufficiently shocking to

4   state substantive due process claims.  *See Nestor Colon Medina & Sucesores, Inc. v.*

5   *Custodio*, 964 F.2d 32, 45-46 (1st Cir. 1992) (rejection of development projects and

6   refusal to issue building permits, even in alleged violation of state law, do not ordinarily

7   implicate substantive due process); *see also infra*, discussion of Count One.  "'In other

8   words, what would serve to raise defendant's actions beyond the wrongful to the

9   unconscionable and shocking are facts which, if proven, would constitute, in themselves,

10  a specific constitutional violation.'"  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 548

11  (6th Cir. 2012), *quoting Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005).  Any alleged

12  injury to Mr. Cesare's profession flows directly from the same facts and injuries alleged

13  in support of Plaintiffs' First Amendment retaliation claim.  Nor would the allegation

14  regarding Mr. Cesare's profession trigger a heightened level of scrutiny.  *See Litmon v.*

15  *Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014) (right to pursue profession not fundamental

16  right and restriction only a violation if irrational).  Because there is an enumerated

17  constitutional right available as a source of protection against the alleged conduct and any

18  resulting injury, Plaintiffs have failed to allege sufficient facts to support a substantive

19  due process claim.  *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999).

20  **7.  The remaining portion of Count Ten should be dismissed; it merely
        reiterates Plaintiffs' defamation claim and suffers the same deficiencies.**

21

22  As explained in the section of this Motion concerning standing, Count Ten alleges

23  a breach of three separate duties.  (1AC ¶¶ 367, 370, & 373.)  Only paragraph 367 alleges

24

25  by the LLC. (E.g. 1AC ¶¶ 301-308, 344-351.)  Even assuming, without conceding, that
    Plaintiffs have standing to raise such injuries, the argument in this section would apply
26  equally to all alleged injuries because Plaintiffs contend retaliatory animus motivated
    each alleged action.

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1   a duty that reasonably could be owed to Joseph Cesare, rather than to the non-party LLC.

2   It is articulated as a duty to "only provide truthful statements" to the public "regarding

3   Mr. Cesare and regarding the negotiations between Plaintiffs and the County."  The First

4   Amended Complaint alleges Defendants "had no right whatsoever" to make public

5   allegations regarding Mr. Cesare's professional dealings and breached their duty by

6   "widely disseminat[ing] false information regarding [his] character and professional

7   dealings." (1AC ¶¶ 368-369.)

8          Plaintiffs have essentially re-stated their defamation claim in this count and

9   labeled it as "negligence."  The only unique aspect of this count may be the attempt to

10   create a negligence per se claim by citing statutes and policies. (1AC ¶¶ 364-366, 376.)

11   However, none of the cited authority creates a statutory standard of care.  Negligence per

12   se only applies when a defendant has violated a specific conduct requirement of a law.

13   *Hutto v. Francisco*, 210 Ariz. 88, ¶ 12, 107 P.3d 934, 937 (App. 2005).  For example, a

14   law that prohibits a person from driving a car in an unsafe condition does not support a

15   negligence per se action for failing to install safety belts because it does not "'proscribe

16   certain or specific acts.'" *Id.*  ¶¶ 13-14.  In other words, a statute defining only a general

17   standard of care does not give rise to negligence per se liability. *Id.* ¶ 14 (providing

18   additional examples).  Nor does a law or regulation intended to protect only the public at

19   large or imposing the performance of a public service.  Restatement (Second) of Torts §

20   288 (1965) & cmt b. (laws and regulations intended to protect public at large, rather than

21   particular class, do not alter default negligence standard).  None of the authority cited in

22   Count Ten proscribes certain or specific acts and so Count Ten is limited to a common

23   law negligence claim.

24          Regardless of the label Plaintiffs use, qualified immunity applies to Defendants'

25   allegedly "untruthful" statements under either a defamation or a negligence theory.

26   Because the alleged statements were made within Carla Blackwell's discretionary

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1  authority to provide information on matters within the scope of her department's

2  functions, she is entitled to qualified immunity. *See Chamberlain*, 151 Ariz. at 555-56,

3  729 P.2d at 909-10 (director's statements regarding department's accounting functions

4  protected by qualified immunity); *see also* Restatement (Second) of Torts § 594 (mere

5  negligence insufficient to defeat conditional privilege to publish information affecting

6  and lawfully protecting important interest of publisher).  Therefore, the same knowing or

7  reckless disregard standard that applies to Plaintiff's defamation claim applies to this

8  count, and both require sufficient factual allegations to support a reasonable inference of

9  objective malice. *Chamberlain*, 151 Ariz. at 558, 729 P.2d at 912 (plaintiffs cannot force

10  public officials to engage in "intensive discovery and cumbersome, time-consuming

11  trials" by "merely alleging malice").  For the same reasons stated under Count One,

12  Plaintiffs have failed to allege sufficient facts regarding objective malice and this count

13  must be dismissed.

14       **8.  Arizona has not recognized a right of action for Count Eleven.**

15       Count Eleven alleges a free speech claim under the Arizona Constitution, art. II, §

16  6.  But there is no Arizona counterpart to 42 U.S.C. § 1983 and no Arizona court has

17  recognized an implied private right of action for damages or for compensation in the

18  event of a violation.  Whether the Arizona Supreme Court would recognize such an

19  action is a novel state-law issue.  When faced with a novel issue of state law, this Court

20  may refuse to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(1). The

21  County respectfully requests that the Court decline to exercise supplemental jurisdiction

22  over Count Eleven.

23       Alternatively, the creation of a new Arizona cause of action for damages presents

24  "significant issues . . . with important public policy ramifications, . . . that have not yet

25  been resolved by the [Arizona] courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir.

26  2003).  Accordingly, if this Court is not inclined to dismiss Count Eleven outright, the

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

1   County respectfully requests that the Court certify the question to the Arizona Supreme

2   Court under A.R.S. § 12-1861.

3        **9.  "Punitive damages" is not an independent legal cause of action.**

4        Count Fifteen does not present a legal claim based on any "cognizable legal

5   theory" and should be dismissed on that basis. *See Balistreri*, 901 F.2d at 699.  Punitive

6   damages are a particular form of relief that may be requested in conjunction with a cause

7   of action that supports such relief; "punitive damages" is not an independent legal claim.

8   Nor can any cognizable legal theory be implied from the factual allegations within this

9   count, which merely re-state factual allegations and legal conclusions addressed in other

10  counts. (1AC ¶¶ 434-457.)

11  **III. Conclusion**

12       Plaintiffs lack standing to raise the claims in Counts Three, Four, Six, Eight, Ten,

13  Twelve, Thirteen, and Fourteen because they allege injuries to an entity that is not a party

14  in this action.  Additionally, Counts One, Two, Three, Six, Seven, Eight, Nine, Ten (in

15  remaining part), Eleven, and Fifteen fail to state a claim upon which relief can be granted.

16  Therefore, the County respectfully requests that this Court dismiss those claims with

17  prejudice.

18       RESPECTFULLY SUBMITTED April 10, 2015.

19                      BARBARA LAWALL

20                      PIMA COUNTY ATTORNEY

21              By /s/ Kelli L. Olson

22                      Lesley M. Lukach

23                      Kelli L. Olson
                    Deputy County Attorneys

24

25

26

1

CERTIFICATE OF SERVICE

2

3

I hereby certify that on April 10, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

4

5

John F. Munger
Adriane J. Hofmeyr
Munger Chadwick, PLC
333 North Wilmot, Suite 300
Tucson, Arizona 85711
*Attorneys for Plaintiffs*

6

7

8

9

By: /s/ Jodi Cavanaugh

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION