**BARBARA LAWALL**
**PIMA COUNTY ATTORNEY**
**CIVIL DIVISION**
Lesley M. Lukach, SBN 014527
Kelli L. Olson, SBN: 029181
Deputy County Attorneys
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Telephone: 520-740-5750
Lesley.Lukach@pcao.pima.gov
Kelli.Olson@pcao.pima.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Cesare, *et al.*,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Pima County, *et al.,*<br><br>　　　　Defendants. | No. CIV-14-2514-TUC-CKJ (EJM)<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT IN PART** |

Defendants Pima County, Pima County Board of Supervisors, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell reply in support of their motion to dismiss. (Doc. 36.) Plaintiffs have largely failed to respond to the specific legal insufficiencies identified by the Motion. Based on their implied concessions, and based on the arguments presented in the Motion, the County respectfully requests that this Court dismiss all claims in the amended complaint (Doc. 32-1) except Count Five. This reply is supported by the following memorandum of points and authorities.

**Memorandum of Points and Authorities**

I. **Argument in Reply**

   A. **Plaintiffs acknowledge that individual harm is required to establish standing. But they do not dispute the County's description of the injuries alleged in Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen, and Fourteen, or explain how those injuries harm Plaintiffs individually.**

To decide the Rule 12(b)(1) portion of the County's motion to dismiss (Doc. 36), the Court need only apply the individual harm standing requirement to the Motion's undisputed description of the injuries alleged in the eight challenged claims.

   **1. The parties agree that standing requires individual injury.**

Plaintiffs suggest that the County contends Plaintiffs lack standing "simply because [the LLC] also suffered collateral damage" or because "one of the entities harmed . . . was [the LLC]." (Doc. 42 at pp.4:11-17, 5:7-10.) As a result of this mischaracterization, Plaintiffs spend time arguing the undisputed issue of whether a corporation and a stockholder may both have standing arising out of the same injury. (E.g., Doc. 42 at p.6:17-21, 8:2-16).

However, Plaintiffs do not dispute the legal standard applied in the Motion: that standing is not automatically conferred on individual members by virtue of their membership in the LLC, but is conferred where a member also suffers a distinct injury not shared equally by the other members. *See Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 52, ¶¶ 17-18, 31 P.3d 821, 826 (App. 2001) (*See* Doc. 36 at pp. 5-7.) Plaintiffs state that persons may have direct claims for "damages that were directed at, and suffered by, them individually."[1] (Opposition at p.6:17-21.) Although whether the conduct was "directed" at Plaintiffs is irrelevant for standing purposes, (*see* Doc. 36 at p.6:8-11), their statement acknowledges that an allegation of individual damages is required. Plaintiffs'

---

[1] Although Plaintiffs acknowledge that individual injury is required, they confuse their position on page 7, lines 15-20, by suggesting that plaintiffs and the LLC *must* both have a cause of action because a corporation and individual *may* both have a cause of action.

shortfall in Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen, and Fourteen is not that they have identified injury to the non-party LLC; it is that they have failed to allege distinct harm to Plaintiffs.

**2. In response to the County's argument regarding eight claims that allege only injury to the non-party LLC's property interests, Plaintiffs reiterate their allegations supporting all claims and decline to respond to the arguments that are specific to the eight challenged claims.**

The County does not challenge Plaintiffs' standing to bring direct claims—such as claims for defamation and retaliation—that conceivably allege the invasion of personal interests and seek to redress injury to personal reputation or freedom of expression. (Motion at pp. 7:3 – 11:7.) Rather than addressing the sweepingly over-inclusive First Amended Complaint ("complaint") as a whole, the Motion's standing argument intentionally identifies only the eight counts in which Plaintiffs allege only injury to the non-party LLC. There is no express or implied reason that injuries to the development or sale of the LLC property would cause Plaintiffs harm apart from their business interest in the LLC, and Plaintiffs did not attempt in their Opposition to articulate any reason that the County may have overlooked in its Motion.

Rather than addressing the eight counts that are the subject of the Rule 12(b)(1) Motion, Plaintiffs merely reiterate all of their alleged injuries as if they are an indivisible whole. They discuss the basis for their defamation and retaliation claims, for which the County does not dispute they have standing. (Doc. 36 at p.3:5 – 4:5.) Their conclusion makes it clear that Plaintiffs refuse to either consider or concede the near-certainty that (accepting their factual allegations as true), the LLC has suffered some injury that Plaintiffs have not individually suffered, steadfastly claiming that they must be able to recover for all such injuries as well. Plaintiffs state: "In sum, the injury done to the plaintiffs . . . , whether or not such injury also was suffered by USH/SVA or Lennar

Home Builders, was most certainly suffered by Mr. Cesare and SVA." (Doc. 42 at p.8:17-25.)

Like the complaint, the Opposition discusses the parties and non-parties interchangeably, and at times even conflicts with the allegations in the complaint. For example, the complaint states that the County is asking the LLC to pay for infrastructure after it already paid development impact fees. (Doc. 32-1 at ¶¶ 35-37.) But in the Opposition, Plaintiffs contend that Plaintiffs are being asked to pay for the infrastructure and that it is Plaintiffs who have paid development impact fees.[2] (Doc. 42 at pp. 3:25 – 4:1.) This fast-and-loose recasting of allegations casts doubt on whether Plaintiffs have made any genuine effort to distinguish between party and non-party injuries.

Because Plaintiffs have not addressed or challenged the County's identification of the business injuries alleged in Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen, and Fourteen, those descriptions should be deemed admitted. Plaintiffs do not dispute that the eight counts only implicate potential injury related to the development and sale of LLC property—although they continue to conclude that they should have standing nonetheless because the LLC's injuries were motivated by animosity toward Plaintiffs.[3] (Doc. 42 at p.5:3-7.) They do not contend that the County omitted or misrepresented any allegation of injury that should be considered when analyzing those eight claims. Therefore, the counts should be dismissed.

---

[2] The County does not concede that either conflicting representation is accurate.

[3] Plaintiffs briefly dispute in their standing response that any cause of action based on statements made in May 2013 is barred by the statute of limitations. (Opposition at p.9:5-8.) Even assuming, without conceding, that those statements are not time barred, they do not affect the analysis. The alleged statements are similar to those alleged the following year and do not affect the character of the injuries alleged in the eight challenged counts.

### 3. Plaintiffs' brief "special duty" argument fails because they have alleged only a general duty that applies to all citizens (and to all LLC members) equally.

Plaintiffs briefly suggest they have standing based on a special relationship with the County. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988) (standing can be created by distinct injury or by special duty between plaintiff and defendant). They argue "the County, as a governmental body, together with its officers and officials, unquestionably has a relationship with, and owes a duty to, its citizens (including the plaintiffs)" that is independent from their status in the LLC. (Doc. 42 at p.7:5-9.) By relying on a general standard of care owed to the public, Plaintiffs ask this Court to expand the special relationship exception so that it swallows the rule. Under their proposed interpretation, any shareholder would have standing to claim injury to any business entity as long as a government or government official is the alleged wrongdoer.

The special relationship exception is not nearly so broad. It exists in harmony with the general principle that a person has standing to remedy an injury to a personal interest, and not as a way to circumvent that foundational principle. Courts have applied this limited exception where there is a relationship, such as an employment contract, that has created a duty and risk of personal harm separate from that borne by other shareholders. *E.g.*, *Albers*, 201 Ariz. 47, ¶¶ 25-26, 31 P.3d at 827-28 (corporation breached employment contracts separate from ownership of stock). Because the general duty Plaintiffs have alleged would apply to all members of the LLC equally, it does not create a distinct duty owed to any one of them, and cannot confer individual standing.

### B. Any claim or injury based on actual re-platting of the Star Valley development is unripe because the re-platting has not yet occurred.

The County's narrow ripeness argument does not apply to those injuries that have allegedly resulted from any threat of re-plat, but only to any injury alleged to have resulted from actual re-platting. (Doc. 36 at p.11:21-23.) The County does not contend

1 that it will not re-plat the subdivision, only that it has not yet done so. Therefore, consistent with the legal principles cited in the Opposition, this is an issue of ripeness rather than mootness because any claims based on an actual re-plat have never been ripe. (*See* Doc. 42 at p.10:2-7, acknowledging that an issue must be ripe before it can become moot.) Any claim based on an actual re-plat of the property should be dismissed, and Plaintiffs should not be able to claim damages for actual re-plat in any remaining claims.

**C. Failure to state claims in Counts One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, and Fifteen**

**1. Arizona law provides that mere allegations of malice are not enough to defeat qualified immunity. But Plaintiffs argue that a conclusory allegation that a government official knew a statement was false should preclude dismissal of their defamation, injurious falsehood, and negligence claims.**

**a. Conclusory allegations of a knowingly false statement are insufficient to defeat qualified immunity and extend litigation.**

Plaintiffs argue that the objective test for malice discussed in *Chamberlain v. Mathis*, 151 Ariz. 551, 729 P.2d 905 (1986), "is inapplicable where [a government official] is alleged to have known his statements were false." In support, they cite *Chamberlain* and *Western Technologies, Inc. v. Neal*, 159 Ariz. 433, 768 P.2d 165 (App. 1989).[4] (Doc. 42 at pp. 1416 – 15:1 & n.46.) Both cases note that, of course, an official who actually knew his statements were false is not shielded by qualified immunity even if a reasonable person may have had reasonable grounds to believe the statement was true. *Chamberlain*, 151 Ariz. at 559 n.6, 729 P.2d at 913 n.6; *W. Tech.*, 159 Ariz. at 440, 768 P.2d at 173.

---

[4] Plaintiffs also cite *Manriquez v. City of Phoenix*, 2014 WL 1319297, **12-15 (Dist. Ariz. 2014), but it is not clear to what portion of that decision Plaintiffs' refer. *Manriquez* reiterates that plaintiffs must prove objective malice to overcome qualified immunity, clarifies that officials are entitled to draw inferences based on cumulative information, and does not appear to discuss an allegation of a knowingly false statement.

By clarifying that a public official is liable for a knowingly false statement, even if another person could believe that the statement was true, neither case discarded the requirement that qualified immunity still applies and that the plaintiff must plead sufficient factual content to allow the court to draw a reasonable inference that the official knew the statement was false. *See Goddard v. Fields*, 214 Ariz. 175, ¶ 12, 150 P.3d 262, 265 (App. 2007). *Chamberlain* expressly requires more than "merely alleging subjective malice." 151 Ariz. at 559, 729 P.2d at 913. Just after making the note relied upon by Plaintiffs, *Chamberlain* reiterates the need to minimize the "loss of time and expense incurred by claims brought against public officials . . . by avoiding lengthy discovery procedures that delve into the mind of the defendant in an attempt to ascertain his subjective motives." *Id.* If a mere allegation that an official knew a statement was false was enough to force a public official into the discovery stage of litigation, the entire principle underlying qualified immunity would be defeated.

### b. Plaintiffs' factual allegations do not support a reasonable inference that the alleged statements were made knowing they were false or with reckless disregard for their truth or falsity.

Plaintiffs confuse pleading facts with pleading legal conclusions when they state that they "have pleaded sufficient facts" to plead defamation, injurious falsehood, and negligence claims "because Plaintiffs have alleged, inter alia, that Defendants knew Ms. Blackwell's statements were false and/or that Defendants acted in reckless disregard of the truth." (Doc. 42 at p.15:6-10.) And the allegations Plaintiffs cross-reference are too vague, attenuated, and internally inconsistent to state a plausible claim of malice. (Doc. 42 at p.15 n.51, referring to allegations discussed at Doc. 42 pp. 22-25; *infra* pp.7-8.)

A mere dispute about who is responsible for making certain improvements to serve the Star Valley development does not create a plausible claim for causes of action—such as defamation, injurious falsehood, and negligence—that require knowing or reckless misconduct. Although sufficient allegations of a factual dispute regarding

ultimate responsibility for offsite improvements could support claims that do not require malice (such as those brought by the LLC and the County in Pima County Superior Court case C20144304 for a declaration of ultimate responsibility for the improvements, *see* Doc. 36-1), allegations of a mere dispute are not sufficient to state a plausible claim for torts that require malicious conduct.[5]

      Plaintiffs have not pleaded sufficient facts to support their conclusory allegations that any statements regarding any such dispute were knowingly or recklessly false. Although Plaintiffs attempt to summarize their theory of malicious conduct in the Opposition, including that "Defendants invented the allegations [of Plaintiffs' or developer's wrongdoing] over the course of a year," (Doc. 42 at p.15:10-15 and n.51), such conclusions are not plausible where the very evidence Plaintiffs rely upon does not support—and is plainly inconsistent with—those conclusions. As explained in the Motion, the complaint relies upon multiple documents that demonstrate the County's consistent position regarding offsite improvements since at least 2002, including the County's refusal to approve the financing plan for Star Valley until the developer committed to participate in offsite improvements. (Doc. 36-3 at p.3 of August 28, 2002 letter attached to that exhibit, relied upon at Doc. 32-1 ¶¶ 94-98; *see also*, generally, Doc. 36-3 attachments and Doc. 42-1.) There are no factual allegations, beyond mere conclusions, that dispute those facts. The complaint simply does not support a reasonable inference that statements about the developer's obligation for improvements were made knowing they were false or with reckless disregard of the truth.

---

[5]For this reason, the County declines to address multiple factual statements in the Opposition that are unsupported by any admissible evidence. But the County does not intend to concede any of those factual issues if they become relevant later in the litigation or if the Court decides to convert the Motion into one for summary judgment.

**2. Multiple categories of information do not implicate sufficient privacy interests to support a false light claim (Count Two). Plaintiffs discuss only one of those, which was not argued in the Motion—whether Mr. Cesare is a "public figure." They do not dispute the County's specific argument: that any alleged publication concerned only Mr. Cesare's public responsibilities and provided information of public benefit.**

The County has argued that Count Two should be dismissed because it fails to allege sufficient facts to plausibly infer actual malice. (Doc. 36 at p.16:3-8.) As an alternate basis for dismissal, it also explained that any alleged publications failed to implicate privacy concerns because they responded to appropriate inquiries by Star Valley residents and because any representations directly or indirectly involving Mr. Cesare referred solely to his professional obligations as a board member and officer of the Star Valley HOA. (Doc. 36 at p.16:9 – 17:9.)

Plaintiffs do not dispute the County's characterization of the alleged publications as discussing only professional matters relating directly to the residents' concerns about their neighborhood.[6] They do not address the portions of *Godbehere v. Phoenix. Newpapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989) and *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 304, 162 P.2d 133, 138 (1945), that provide that the dissemination of information the public rightfully deserves does not implicate privacy interests, regardless of whether the subject is a "public figure" for all purposes. (Doc. 42 at pp.16-17.) The allegations in Plaintiffs' complaint are a quintessential example of such information: where concerned community members reach out to the County about the need for access from their homes to County roadways, it is not only proper but utterly expected that the County should respond to those inquiries and assist its constituents by

---

[6]Although Plaintiffs briefly refer to statements made outside the statute of limitations period, (Doc. 42 at p.17:17-19), none of the alleged statements at the earlier homeowners' association meeting would change the analysis. Nothing suggests any comments were of a private nature, rather than substantive responses to homeowner concerns regarding the Star Valley development.

explaining the professional responsibilities of the involved parties. The public's access to that non-private information should not be cut off by threats of litigation based on mere conclusory allegations of falsity and malice.

Instead of responding to the concept of statements that convey information in which the public has a rightful interest, Plaintiffs briefly argue that Mr. Cesare does not meet the definition of "public figure" and is not a "public official." (Doc. 42 at p.17:1-5.) They then note that even public figures may be able to sue regarding malicious publications if they present their "private life in a false light," although they make no effort to explain how the alleged publication relates to Mr. Cesare's "private life." (Doc. 42 at p.17:10-12.) These observations do not affect the analysis presented in the Motion, and Count Two should be dismissed as a matter of law.

**3. Plaintiffs do not dispute that the County's response to a default is a discretionary decision. Because a discretionary decision cannot support a class-of-one equal protection claim, this issue is dispositive.**

**a. Plaintiffs do not respond to the Motion's application of the *Enquist* holding to their equal protection claims.**

Plaintiffs' equal protection counts are based on alleged actions the County took or threatened to take based on its determination that the LLC has defaulted on its obligations under an assurance agreement. (*See* Doc. 36 at pp.19:12-15.) The County argued that class-of-one claims are only appropriate where the government's deviation from a non-discretionary clear standard is evident without a detailed inquiry into the underlying circumstances. (*See* Doc.36 at pp.18:18 – 19:11, relying on *Engquist v. Oreg. Dep't of Agric.*, 553 U.S. 591, 602 (2008).) The Motion summarized the evidence relied upon in the complaint (and one publicly recorded document) to illustrate the clearly discretionary nature of the County's challenged decisions. (Doc. 36 at pp.19:19 – 20:12.)

In response, Plaintiffs mention *Enquist* and then conclude, without further clarification, that the rule excepting subjective government determinations from judicial

examination under a class-of-one equal protection theory "does not assist Defendants in the present case." They do not further discuss *Enquist* or the discretionary nature of the County's actions, except for a footnote suggesting that the principle described in *Enquist* is limited to employment cases. (Doc. 42 at p.19 n.70.) As the Motion noted (Doc. 36 at p.19:3-11), *Enquist* itself used the example of a police officer issuing speeding tickets to illustrate what would be an improper application of the Equal Protection Clause to discretionary government action. And *Enquist* has been applied outside the government employment context by many circuit courts. *See Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327, 336-37 (1st Cir. 2015) (collecting cases). Plaintiffs do not attempt to identify a "clear standard [for responding to defaults of assurance agreements] against which departures, even for a single plaintiff, could be readily assessed." *See Enquist*, 553 U.S. at 602. Based on the evidence relied upon in the complaint and cited in the Motion, it is evident that any effort to do so would be futile.

> **b. Even assuming Plaintiffs' equal protection claims could properly challenge a fact-intensive discretionary decision, Plaintiffs have not adequately addressed additional fatal flaws: they have not pleaded facts regarding a similarly situated property or the County's legitimate reasons to re-plat the property.**

After their brief mention of the dispositive principle articulated in *Enquist*, Plaintiffs transition quickly into a fact-intensive argument about why they disagree with the County's discretionary decision and dispute that its offered reasons were its actual reasons for acting. (Doc. 42 at pp. 20:20 – 26:5.) At the risk of being pulled too far afield from the threshold problems already discussed (including the jurisdictional defects described above), the County briefly discusses Plaintiffs' failure to plead other required elements of an equal protection claim. For example, Plaintiffs fail to rebut the County's observation that the complaint does not identify any other property with the same basic default circumstances as Blocks 4, 7, and 8 of the Star Valley development. (Doc. 36 at

p.21:18-25.) To the contrary, they attach a memorandum that explains that Blocks 2, 13, and 18 (used as a comparison at Doc. 42 p.20:6 and Doc. 32-1 ¶¶ 280-84) have been released from their assurance agreements and therefore cannot be in default of any agreement. (Doc. 42-1 at Exhibit A p.2.)[7] As Plaintiffs concede (Doc. 42 at p.25:1-10), the same memorandum also clarifies that other Pima County properties in default of assurance agreements (relied upon as remaining comparison at Doc. 32-1 ¶ 286) differ from Blocks 4, 7, and 8 because their owners have not disputed that they will need to comply with their obligations. (Doc. 42-1 at Exhibit A p.4.) When determining an appropriate response to a default, an owner's acknowledgment of responsibility for default logically affects the discretionary options available to the County because a mere extension of time could cure the default. And whether or not Plaintiffs dispute the County's reasons as being "bogus" (Doc. 42 at p. 25:12), they have not alleged sufficient facts—and have alleged too many contradictory facts—to support a plausible claim that there is no conceivable legitimate basis for the County to seek re-plat of the LLC's Blocks 4, 7, and 8, while not seeking to re-plat some other properties. (*See also* Doc. 42 at p.21:11, conceding County has provided plausible reasons.) Further inquiry into the County's actual reasons is unnecessary under rational basis review.[8]

---

[7]The Court may consider Doc. 42-1, exhibit A, without converting this motion to one for summary judgment; the document is relied upon by the complaint. (Doc. 32-1 at ¶ 286.)

[8]Plaintiffs misstate the proper legal burden for a rational basis equal protection claim, stating: "The burden lies on the state to show that differential treatment has a rational basis." (Doc. 42 at p. 19:5-6.) Plaintiffs cite *Enquist*, 553 U.S. at 603, which merely acknowledged in passing that, in *Olech*, the state was required to provide a rational basis for its decision *after* the plaintiff had stated a claim by identifying a deviation from a clear and non-discretionary standard. It did not discuss or disturb the well-established rule that the plaintiff under rational basis has the initial burden to negate the conceivable legitimate reasons for the government action. (*See* cases cited at Doc. 36-1 p.22:3-11.)

**4. Plaintiffs have not responded to the argument that binding case law precludes them from relying on substantive due process (Counts Seven and Nine) when the First Amendment would provide explicit protection for the type of retaliation they allege. Instead, they merely note that general procedural rules allow for alternate pleading.**

When a particular Amendment explicitly protects against a particular sort of governmental behavior, "'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994), *quoting Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiffs do not address *Albright*, *Connor*, or otherwise offer any discussion of this rule, which applies particularly to substantive due process claims because of the lack of reliable "guideposts for responsible decisionmaking" in the area. *See Albright*, 510 U.S. at 271-72. Instead, Plaintiffs note that, as a general matter of procedure under Rule 8(d), Fed. R. Civ. P., pleading alternate claims is permitted. (Doc. 42 at pp.26:12 – 27:11.) And they concede that there is "no inconsistency whatsoever" between their First Amendment retaliation claim and their purported substantive due process claims. (Doc. 42 at p. 27:2-4.)

Plaintiffs then offer a discussion on the merits of their allegations, which does not respond to any legal argument presented in the Motion. (Doc. 42 at pp. 27:12 – 31:4.) Nothing in that discussion contradicts that their First Amendment retaliation claim would protect against any alleged conduct and injury. They confirm that that Counts Seven and Nine are based on alleged retaliation for protected speech. (Doc. 42 at pp.28:17 – 29:10, 31:1-4.) They do not dispute that the alleged retaliation for their political activities is the aspect of the alleged conduct that would be sufficiently "shocking" to state a substantive due process claim. (*See* Doc. 36 at p.24:1-11.) Nor do Plaintiffs appear to cite any case that discussed both a retaliation claim and a substantive due process claim in the same action. Instead, these three pages resemble a response to a non-existent motion regarding the merits of their retaliation claim, citing intermittently to their own complaint and to

BARBARA LAWALL
PIMA COUNTY ATTORNEY
CIVIL DIVISION

selective documents to dispute the reasons the County has provided to explain its response to the developer's default. (Doc. 42 at pp. 27:12 – 31:4.)

Because Plaintiffs do not respond to the legal argument presented in the Motion, nor to the County's application of the legal argument to the claims, the substantive due process claims should be dismissed.

**5. Plaintiffs do not identify a policy or statute that can support a negligence per se claim by proscribing specific conduct.**

In its Motion, the County first argued that any portion of Plaintiffs' negligence claim that remains after the standing analysis is applied should be dismissed because Plaintiffs have failed to allege sufficient facts to defeat qualified immunity. (Doc. 36 at p.25:24 – 26:13.) Although Plaintiffs seem to have responded to that argument by combining it with the defamation discussion (Doc. 42 at p. 13:18-23), they also contend the County has conceded that they have stated a common law negligence claim. (Doc. 42 at p.31 n.137.) To the contrary, in the portion of the Motion cited by Plaintiffs, the County first clarifies that a negligence per se claim has not been stated, then observes that the only possible remaining claim would be limited to common law negligence, and finally reiterates why a common law claim has not been stated and must be dismissed. (Doc. 36 at pp. 24:20 – 26:13.)

In its brief response to the County's argument regarding negligence per se, Plaintiffs merely cross-reference without further elaboration the allegations in their amended complaint—which refer only to general standard-of-care-type statutes and policies—and cite a case that reiterates the rule that, to support a negligence per se claim, a law must prohibit a specific act. (Doc. 42 at p.31 and n.38 & 39.) They fail to identify any specific act prohibited by any of the laws they have cited. Plaintiffs should be deemed to have admitted that the complaint does not include any such allegation.

### 6. Arizona has not recognized a right of action under article II, § 6 of the Arizona Constitution.

It is unclear from the phrasing in their Opposition whether Plaintiffs dispute that Arizona has no counterpart to 42 U.S.C. § 1983 and that no Arizona court has recognized an implied private right of action for damages under article II, § 6 of the Arizona Constitution. In any event, they claim the County is "incorrect" that Count Eleven should be dismissed for that reason. (Doc. 42 at p.31:22.) In support, Plaintiffs cite two cases, neither of which holds or suggests that Arizona's free speech provision provides a private right of action for damages: (1) *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 (1986), which observes that 42 U.S.C. § 1983 creates a species of tort liability based on violations of the federal Constitution and does not discuss the Arizona Constitution, and (2) *Mountain States Telephone Co. v. Arizona Corporation Commission*, 160 Ariz. 350, 358, 773 P.2d 455, 463 (1989), in which the Arizona Supreme Court granted only declaratory relief by holding that a corporation commission decision was void and unenforceable. Plaintiffs argue that, because the scope of the free speech right referred to in the Arizona provision is broader than that protected by the federal provision, it must also create liability for monetary damages. (Doc. 42 at 13-20.) Plaintiffs fail to offer any support for their suggestion that the scope of a protected right determines whether a private right of action for damages has been created. This claim should be dismissed.

### 7. Plaintiffs concede that their punitive damages claim should be dismissed.

Plaintiffs concede that Count Fifteen of the First Amended Complaint fails to state a claim upon which relief can be granted. (Doc. 42 at p.32:23-27.) Therefore, this count should be dismissed.

## II. Conclusion

Plaintiffs essentially challenge the County's decision to take action against a non-party LLC for defaulting on a subdivision assurance agreement. Although the Plaintiffs are not the LLC and although they do not own the property, they have brought this separate action because they allegedly believe the County's decision to enforce the assurance agreement was made in retaliation against Plaintiffs. Based on that presumption, they filed a fifteen-count complaint that seeks relief for almost every conceivable injury that could be related to the County's actions, including injuries with no alleged effect on Plaintiffs beyond their membership interest in the LLC. Plaintiffs have also failed to allege sufficient facts to support their individual claims, other than their retaliation claim, and have largely failed to respond to the specific legal challenges to those claims. In particular, Plaintiffs disregard that many of those claims require sufficient factual allegations to reasonably infer something beyond a mere disagreement about the LLC's responsibilities to construct offsite improvements related to its property. The County respectfully requests that this Court dismiss all claims except Count Five.

RESPECTFULLY SUBMITTED June 23, 2015.

BARBARA LaWALL
PIMA COUNTY ATTORNEY

By /s/ Kelli L. Olson
Lesley M. Lukach
Kelli L. Olson
Deputy County Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John F. Munger
Adriane J. Hofmeyr
Munger Chadwick, PLC
333 North Wilmot, Suite 300
Tucson, Arizona 85711
*Attorneys for Plaintiffs*

By: /s/ Jodi Cavanaugh