1

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Joseph Cesare, et al.,                      No. CV-14-02514-TUC-CKJ (EJM)

10                      Plaintiffs,              **REPORT AND
                                                 RECOMMENDATION**
11   v.

12   Pima, County of, et al.,

13                      Defendants.

14

15

16          Pending before the Court is Defendants' Motion to Dismiss First Amended

17   Complaint in Part. (Doc. 38). Defendants argue for dismissal under Fed.R.Civ.P. 12(b)(1)

18   because Plaintiffs lack standing as to some counts, and also argue for dismissal under

19   Fed.R.Civ.P. 12(b)(6) as to other counts for failure to state a claim upon which relief may

20   be granted.

21          Pursuant to the Rules of Practice of this Court, this matter was referred to the

22   undersigned for a Report and Recommendation. (Doc. 29).

23          In this civil rights action, Plaintiffs allege Defendants committed a number of acts

24   in retaliation against Plaintiff Joseph Cesare for his support of a Republican candidate

25   during the 2012 Pima County elections. Plaintiffs are Joseph Cesare, a property

26   developer, and S.V.A. Corporation ("SVA"). Joseph Cesare is a shareholder, director,

27   and vice president of SVA. SVA is a member of USH/SVA Star Valley, LLC ("LLC"),[1]

28   _____

[1] Lennar Home Builders is also a member of the LLC, but neither Lennar nor the

which is the master developer of a residential development in Pima County called Star Valley. The LLC is also the beneficiary of the trust that holds legal title to the Star Valley property. Defendants are Pima County, the Pima County Board of Supervisors, Sharon Bronson (an elected Supervisor on the Pima County Board of Supervisors), Chuck Huckelberry (Pima County Administrator), and Carla Blackwell (Deputy Director of Development Services).

Plaintiffs allege fifteen counts in their First Amended Complaint: Count One, Defamation; Count Two, False Light; Count Three, Injurious Falsehoods; Count Four, Tortious Business Interference; Count Five, Violation of 42 U.S.C. § 1983—First Amendment; Count Six Violation of 42 U.S.C. § 1983—Equal Protection; County Seven, Violation of 42 U.S.C. § 1983—Substantive Due Process; Count Eight, Equal Protection; Count Nine, Substantive Due Process; County Ten, Negligence; Count Eleven, Violation of Ariz. Const. Art. 2, § 6—Freedom of Speech; Count Twelve, RICO—Federal; Count Thirteen, RICO—State; Count Fourteen, Violation of A.R.S. § 11-1604; Count Fifteen, Punitive Damages. (Doc. 31).

Because oral argument would not aid the Court's decisional process and the briefing is adequate, Defendants' and Plaintiffs' request for oral argument will be denied. *See generally Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

The Motion has been fully briefed by the parties. For the reasons stated below, the Magistrate Judge recommends that the District Court grant the Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) in part, and grant the Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The allegations in this action concern a residential property development known as Star Valley. Pima County approved Star Valley's master block plat on or about July 15,

LLC are parties to this action. The LLC was a party to a separate action filed in Pima County Superior Court.

2002. (Doc. 31 at 5 ¶ 27). On April 8, 2003, the Pima County Roadway Development Fee Ordinance was passed, which obligated Star Valley to pay development impact fees. *Id*. ¶ 33. The stated purpose of this ordinance was for "new development to pay its proportionate share of the costs to Pima County associated with providing beneficial transportation facilities to the development." *Id*. ¶ 34. Plaintiffs maintain that Plaintiffs and the LLC never signed an agreement with Pima County to pay separately for construction of additional offsite infrastructure as the Star Valley population grew. *Id*. at 6 ¶ 35. Plaintiffs further state that if the LLC had signed an agreement, it would have obligated the LLC to pay twice for the same infrastructure because the LLC was already paying for offsite infrastructure through the development impact fees. *Id*. ¶ 36. From 2003 to October 25, 2013, the LLC paid $5,139,305.00 in development impact fees to Pima County. *Id.* ¶ 37; Doc. 38 Ex. 2 at 17.

During the 2012 elections in Pima County, the incumbent Democrat Sharon Bronson sought reelection for the position of Supervisor for District Three. (Doc. 31 at 7 ¶ 42). Ms. Bronson ran against Tanner Bell, a Republican. *Id.* ¶ 43. Ms. Bronson won the election. *Id*. ¶ 44. Plaintiffs allege that Ms. Bronson believes and/or perceives that Plaintiff Joseph Cesare and his family supported Mr. Bell, and that they provided information on the road conditions in District Three to Mr. Bell to use in his campaign against Ms. Bronson. *Id*. ¶¶ 47, 48.  Plaintiffs further allege that Ms. Bronson told Joseph Cesare that she was going to get even with him for supporting a Republican in the 2012 elections. *Id.* at 8 ¶ 49. Plaintiffs claim that since 2013, Defendants "have taken actions that amount to revenge and retaliation against Mr. Cesare, including his entities." *Id.* ¶ 52.

Plaintiffs allege that Pima County received complaints from Star Valley residents in 2011, 2012, and 2013 regarding the need of an additional road to access the development and the maintenance of trails built next to the development. *Id.* ¶¶ 55, 56.

On November 29, 2012, Pima County sent Joseph Cesare a letter stating that as the master developer, he was responsible for building the Camino Verde road extension and

1   for paying half the cost of a traffic signal to be installed at Wade and Valencia roads. *Id.* ¶

2   60.

3          On May 4, 2013, Defendants Blackwell, Bronson, and Huckelberry attended a

4   public meeting with residents of Star Valley. *Id*. at 10 ¶ 63. Plaintiffs allege that at the

5   meeting, Pima County attempted to lay responsibility for the Camino Verde extension on

6   the master developer, that Defendant Huckelberry told Star Valley residents that the

7   County would build the Camino Verde extension but require the developer to pay for it,

8   and that Defendant Huckelberry stated the County had the money for the extension

9   because it could allocate impact fees to be used for the extension. *Id*. ¶¶ 67–69. Plaintiffs

10  further allege that Pima County refused to accept responsibility for maintenance of the

11  trail system and advised Star Valley residents that the developer was responsible for trail

12  maintenance. *Id*. at 11 ¶ 71.

13         On April 9, 2014, Defendant Carla Blackwell sent a letter to Joseph Cesare (as

14  president of the Star Valley HOA), Jeffrey Cesare (as vice president of the HOA), and

15  Kathleen Buske, president and CEO of Platinum Management Inc. (the HOA's

16  management company). (Doc. 38 Ex. 2).[2] The letter noted that the County had received

17  several inquiries from Star Valley homeowners and that the County planned to respond to

18  the inquiries as outlined in the letter. *Id*. at 2. The letter stated that:

19              The comments as reported to us from the meeting represent a
20              lack of fiduciary responsibility on your behalf as the sole
                Board members and officers [of the Star Valley HOA] . . .
21              Your misrepresentations are harming the residents'
                enjoyment of their property rather than solving or addressing
22              issues, thereby opening the door to future claims against you
                from the homeowners for negligence.

23
24  *Id.* In response to the homeowners' concerns, Ms. Blackwell stated that the County could

25  not accept responsibility for the maintenance of the trails, that the LLC was responsible

26  for constructing the access road as a condition of the master block plat and the

27  transportation implementation plan, and that the development impact fees were used to

28

    _____

          [2] The April 9, 2014 is the main basis of Plaintiffs' claims against Defendants.

1  pay for regional roadways but not roads that directly serve the Star Valley development.

2  *Id*. at 2–4. The letter also noted that:

> Neglecting your responsibilities to the homeowners and future homeowners by not completing infrastructure and not maintaining the existing trials and amenities of the Star Valley will not further resolution of these issues. As the sole Board members and officers for the HOA, not properly maintaining the assets of the neighborhood is acting in bad faith. As previously communicated, no further lots or blocks will be released for development without payment of the traffic light and resolution of Camino Verde among other issues.

9  *Id*. at 4.[3] Plaintiffs claim that Ms. Blackwell copied the April 9, 2014 letter to several

10  members of the HOA, and that Ms. Blackwell knew or should have known, and also

11  intended, that her letter would be forwarded to the 1400 members of the Star Valley

12  HOA. (Doc. 31 at 18–19 ¶¶ 115, 117–119). Plaintiffs allege that after receiving the letter,

13  members of the HOA incited each other to pass out flyers to future homeowners and slow

14  sales within Star Valley. *Id*. at 20 ¶ 122.

15      On July 10, 2014, Pima County sent a notice to the LCC and Stewart Title & Trust

16  advising them of the County's intent to exercise its option to re-plat Blocks 4, 7, and 8 of

17  Star Valley. (Doc. 31 at 23 ¶ 141). Plaintiffs maintain no such notice was sent to Lennar

18  for the blocks owned by Lennar, nor has any such notice been sent to any other property

19  developer in Pima County. *Id*. ¶¶ 142–143. As summarized by Defendants, the notice

20  sent to Plaintiffs

> explained that the County had decided to initiate its option to re-plat blocks 4, 7, and 8 of Star Valley and outlined the factors that had led to the decision, including: (1) failure to complete subdivision improvements within the time allowed by the related assurance agreements; (2) transfer of title of blocks 4, 7, and 8 without Pima County authorization in violation of assurance agreements; (3) failure to comply with transportation plans and rezoning conditions (including the

---

[3] Attached to the April 9, 2014 letter is another letter from Pima County to Joseph Cesare dated May 1, 2009, informing Mr. Cesare that the county was "accepting the drainage improvements outlined on the attached aerial photographs" but noting that "trails that have been built within the drainage channels . . . are specifically excluded from this acceptance . . . and the County shall not . . . be deemed to have in any way accepted maintenance of or responsibility for those trails." *Id*. at 6.

1    previously discussed improvements); and (4) changes in
     surrounding conditions.
2

3   (Doc. 38 at 3–4) (*citing* Ex. 4 at 1–2). "The notice provided that the owner was allowed

4   to cure the default with new agreements that would 'fulfill the obligations and ensure

5   performance,' at which point the County could cease the re-platting process." *Id*. at 4

6   (*citing* Ex. 4 at 2). The notice also included a copy of the Pima County Board of

7   Supervisors policy authorizing re-platting. (Doc. 38 Ex. 4 at 5–7). The policy explains

8   that when a developer is in default of an assurance agreement to complete subdivision

9   improvements, "the County has the option to re-plat the subdivision." *Id*. at 5. The policy

10  further states that "in partially constructed developments where some lots have been

11  released and sold prior to completion of all infrastructure . . . it is in the best interests of

12  the County to consider exercising its option to re-plat." *Id*.  Defendants note that "[a]s of

13  January 20, 2015, the Board of Supervisors has not re-platted the subdivision." (Doc. 38

14  at 4).[4]

15          Plaintiffs maintain that no agreement, statute, ordinance, rule, or regulation exists

16  which obligates the LLC to maintain the trail system, to construct the Camino Verde

17  extension, or to construct a traffic light at Wade and Valencia roads. (Doc. 31 at 14 ¶¶

18  88–90). Plaintiffs also allege that Defendants knew, at all times relevant to the

19  Complaint, that no transportation finance plan was in place between Pima County and the

20  master developer (the LLC), and that the master developer had no responsibility to pay

21  for the construction of offsite improvements. *Id*. at 16 ¶ 103. Plaintiffs claim that:

22              In retaliation for Mr. Cesare's and USH/SVA's refusal to
                accept responsibility for the Camino Verde extension and the
23              traffic light, and for Mr. Cesare's and his sons' suspected
                political affiliations during the 2012 elections, and for Mr.
24              Cesare's questioning about the County's use of the
                $5,139,305.00 development impact fees, the County, Sharon
25              Bronson and Chuck Huckelberry have refused to release any
                further blocks/lots in Star Valley, and have refused to issue
26              any further building permits at Star Valley for blocks in

27  ────────────────

28  [4] The Board of Supervisors voted to remove the abandonment and re-platting of
    Star Valley from the agenda during a meeting on January 20, 2015, pending the outcome
    of the lawsuit pending in Pima County Superior Court. (Doc. 38 Ex. 5 at 4).

1
2

which Mr. Cesare and SVA have an interest (but not for blocks owned by Lennar).

3
4
5
6
7
8
9
10

*Id.* at 20 ¶ 123. Plaintiffs further allege that the Defendants "have illegally begun a 're-platting' process of the undeveloped portions of Star Valley in which Mr. Cesare has an interest (but not the blocks owned by Lennar)." *Id*. at 21 ¶ 125. Plaintiffs also claim that as a result of Defendants' allegations against Joseph Cesare and the County's refusal to release lots or issue building permits, the LLC lost a contract to sell 572 lots at Star Valley to another developer, LGI Inc. *Id*. at 22 ¶¶ 131, 133–134. Plaintiffs further state that because Plaintiff SVA has 50% ownership of the LLC, Plaintiff SVA personally lost 50% of the profits from the sale to LGI. *Id*. ¶ 135.

11
12
13
14
15
16
17
18
19

Plaintiffs also note that the LLC brought suit against Pima County in Pima County Superior Court regarding the threatened re-platting of Star Valley. (Doc. 31 at 26 ¶ 156). Plaintiffs allege that the LLC offered to settle that suit with Pima County for the full amount that the County alleged the LLC owed, but that the County refused to settle unless Joseph Cesare also dropped his claims against the County in this suit. *Id*. ¶¶ 158–159. However, Plaintiffs note that the LLC's suit was eventually settled and dismissed on April 28, 2015. (Doc. 45 at 12 n. 34). Plaintiffs maintain that in the present suit, Joseph Cesare is bringing personal claims that are independent of the claims brought by the LLC in its suit against the County. (Doc. 31 at 26 ¶ 160).

20
21
22

Plaintiffs filed the present action in this Court on December 3, 2014. (Doc. 1). The case is now proceeding on Plaintiffs' First Amended Complaint, filed February 20, 2015. (Doc. 31). Defendants filed their Motion to Dismiss on April 15, 2015. (Doc. 38).

23

## II.     MOTION TO DISMISS: STANDING

24
25
26
27
28

Defendants argue Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen and Fourteen should be dismissed for lack of subject matter jurisdiction because Plaintiffs do not have standing to bring claims belonging to the non-party LLC. (Doc. 38 at 4). Defendants' argument is based on the premise that Plaintiffs only allege injuries to the non-party LLC but not to themselves. *Id*. at 5. Defendants do not contest that a

corporation and a stockholder *may* both having standing arising from the same injury when certain conditions are met, but argue that Plaintiffs' error here is that they fail to allege distinct harm to Plaintiffs. (Doc. 48 at 2–3).

Plaintiffs contend that they are not seeking redress for the injury caused to the LLC, but that they are seeking redress for the harm caused to Plaintiffs "as a result of the County's efforts to prevent Mr. Cesare from earning a living in his trade and profession." (Doc. 45 at 4). Specifically, Plaintiffs allege "the County has been, and is, engaged in a campaign of retaliation and retribution against Mr. Cesare and his family," and that "[t]he goal of this campaign has been to drive Mr. Cesare out of business by inducing third parties to cease and/or refrain from doing business with any entity in which Mr. Cesare has an interest (including plaintiff SVA Corporation, of which Mr. Cesare is the sole shareholder)." *Id.* at 5. Plaintiffs further allege that "the County tailored its attacks so as to focus the injury on Mr. Cesare and *avoid* injury to other parties that did not commit Mr. Cesare's political offenses." *Id.* Thus, Plaintiffs conclude, while "the harm to USH/SVA was an unavoidable by-product that the County was willing to accept . . . the 'gravamen' of the plaintiffs' claims in this case is the injury to Mr. Cesare and SVA Corporation, not the collateral injury to USH/SVA." *Id.* at 5–6.

### A. Legal Standard

The Court must analyze the jurisdictional question of standing at the outset of a case because it "precedes, and does not require, analysis of the merits" of a case. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted). Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. Allegations raised under Rule 12(b)(1) should be addressed before other reasons for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses raised become moot. *See Wright and Miller*, Federal Practice and Procedure: Civil 2d § 1350, 209–10 (1990).

The Supreme Court has established a three-part test for standing: "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest

which is (a) concrete and particularized . . . and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (citation omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant,' and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (citation omitted). "Third, it must be 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Id.* (citation omitted).

Although Defendants are the moving party, Plaintiffs have the burden of establishing standing. *Hernandez v. Vallco Int'l Shopping Ctr., LLC*, 2011 WL 890720, *3 (N.D. Cal. March 14, 2011) ("when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

To defeat a Rule 12(b)(1) motion, Plaintiffs "need only show that the facts alleged, if proved, would confer standing upon [them]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (citation omitted). The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *See Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir.2000) (internal quotations and citations omitted). However, the Court need not "accept the truth of legal conclusions merely because they are cast in the form of factual allegations." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009). The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

## B. Standing Analysis

At issue in the present case is whether Plaintiffs have standing to bring the claims in Counts Three, Four, Six, Eight, Ten, Twelve, Thirteen and Fourteen of the First

Amended Complaint, or if those claims properly belong to the non-party LLC. Under Arizona law, a member may bring a derivative action in the right of the limited liability corporation if certain conditions are met. *See* A.R.S. § 29–831. Here, however, Plaintiffs do not claim to bring a derivative action on behalf of the LLC, but instead filed a direct action on their own behalf.

"As a general rule, an action enforces a corporate right 'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders.'" *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987) (*quoting* 12B W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5911 (rev. perm. ed. 1984) (footnotes omitted)).

> A shareholder may maintain a direct action under certain circumstances, however, such as when (1) the relationship between the shareholders and a wrongdoer is separate from the shareholders' status as shareholders or their ownership interest in the corporation, (2) the wrongdoer owes a duty to the shareholders for some reason other than their status as shareholders, or (3) the injuries or damages were sustained by individual shareholders rather than by the corporation.

*Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 52 (Ct. App. 2001).

The Arizona Supreme Court considered the issue of shareholder rights of action and derivative suits in the case of *Hidalgo v. McCauley*, 50 Ariz. 178 (1937), quoting extensively from the case of *Green v. Victor Talking Machine Co.*, 24 F.2d 378 (2d Cir. 1928):

> When there are numerous shareholders, it is apparent that each suffers relatively, depending upon the number of shares he owns, the same damage as all the others, and that each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Obviously it is sound policy to require a single action to be brought by the corporation, rather than to permit separate suits by each shareholder. In logic the result is justified, because the only right of the shareholder which has been infringed is what may be called his derivative or corporate right . . . even a sole shareholder has no independent right which is violated by trespass upon or conversion of the corporation's property. Only his 'corporate rights' have been invaded, and consequently he cannot sue the tort-feasor in an action at law.

*Hidalgo*, 50 Ariz. at 182–83 (*quoting Green*, 24 F.2d at 380–81). Defendants argue that "[t]he policy reasons for barring member actions on behalf of a LLC are particularly prominent in this case . . . [because] there is not only a risk, but a certainty, of a multiplicity of actions because the LLC has already brought an action based on the same injuries alleged by one of its members here." (Doc. 38 at 6–7). While the LLC has apparently settled its suit against the County in Pima County Superior Court, the Court finds that the risk of multiplicity is still present because the current suit may re-litigate issues already resolved in the settled suit, and because there remains the possibility that other members of SVA or the LLC may also file suit.

The *Green* court further found that even where "a tort-feasor is motivated by malice toward a particular shareholder," there is still no personal right of action because:

> The intention of the defendant is to invade the 'corporate rights' of the shareholders; that is, the corporation's rights, whether this end is desired as a means of satisfying a grudge against some particular shareholder or all of them, or for some other motive . . . motive will not of itself create an independent cause of action in favor of shareholders, because only their derivative or corporate rights have been infringed. The policy of having their remedy lie in a suit by the corporation is not affected by the wrongdoer's malice toward an individual shareholder.

*Hidalgo*, 50 Ariz. at 183–84 (*quoting Green*, 24 F.2d at 381); *see also Sax*, 809 F.2d at 614 ("Even if the defendants depleted [the corporation's] assets with the sole purpose of decreasing the value of Sax's stock and destroying his return on his investment, the action would nonetheless be derivative."). In the present case, Plaintiffs allege Defendants' conduct was motivated by a desire to drive Joseph Cesare out of business. (Doc. 45 at 4–5). However, even if that were the case, *Hidalgo* makes clear that regardless of Defendants' alleged motive, Plaintiffs still do not have a personal right of action against Defendants because Defendants' intention in withholding building permits and threatening to abandon and re-plat Star Valley is an invasion of the LLC's rights, and Plaintiffs' remedy therefore lies in a suit brought by the LLC.

The *Green* court also noted that in order "[f]or a shareholder to obtain a personal

right of action there must be relations between him and the tort-feasor independent of those which the shareholder derives through his interest in the corporate assets and business." *Hidalgo*, 50 Ariz. at 184 (*quoting Green*, 24 F.2d at 381). Plaintiffs argue that a special relationship and duty exist under *Hidalgo* and *Albers* because "the County, as a governmental body, together with its officers and officials, unquestionably has a relationship with, and owes a duty to, its citizens (including the plaintiffs) that is separate from and independent of their status as interest-holders in USH/SVA." (Doc. 45 at 7). Defendants counter, and the Court agrees, that Plaintiffs' interpretation of the special relationship exception would swallow the rule—under Plaintiffs' proposed interpretation, "any shareholder would have standing to claim injury to any business entity as long as a government or government official is the alleged wrongdoer." (Doc. 48 at 5). There is no more a special relationship between Plaintiffs and Defendants here than there is between Defendants and any other individual living in Pima County. The nature of the relationship between Defendants and Plaintiffs is not based on anything other than Plaintiffs' status as shareholders in the LLC, and even if Defendants did owe a special duty to shareholders, the duty would be owed to all members of the LLC, not just Plaintiffs.

The Arizona Supreme Court also examined the individual injury exception to the general rule that only the corporation may bring a cause of action in the case of *Funk v. Spalding*, 74 Ariz. 219 (1952).:

> If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action . . . The action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation.

*Funk*, 74 Ariz. at 223 (*quoting Sutter v. Gen. Petroleum Corp.*, 28 Cal.2d 525, 530 (Sup. Ct. 1946)). Plaintiffs rely on *Funk* to argue that "a stockholder may sue as an individual where he is directly and individually injured although *the corporation may also have a cause of action* for the same wrong." (Doc. 45 at 7) (*quoting Funk*, 74 Ariz. at 223) (emphasis added by Plaintiffs). However, *Funk* is distinguishable from the present case.

In *Funk*, two stockholders each owned 50 percent of stock in a corporation. When one stockholder entered the navy, the other stockholder took over management of the company but then failed to pay the enlisted stockholder his share of the profits when the company was sold. The court found that there was a special relationship between the parties in that there was an express or implied contract to share in profits, and further found that there was no injury to the corporation because the profits were not a corporate asset but an obligation due to the two stockholders. Thus, the court held that the failure to properly distribute the profits resulted in injury solely to the enlisted stockholder, and he could therefore properly bring an individual action pursuant to the exception in *Sutter*. *Funk*, 74 Ariz. at 224. In the present case, there is no special duty owed by Defendants to Plaintiffs that is distinct from Plaintiffs' status as shareholders in the LLC, nor have Plaintiffs alleged a distinct personal injury separate from the injury to the LLC for Counts Four, Six, Eight, Ten, Twelve, Thirteen and Fourteen. Accordingly, the individual injury exception applied by the court in *Funk* does not apply to the case at hand.

With the above principles on injury to the corporation versus injury to individual shareholders in mind, the Court will now turn to each of the claims Defendants allege Plaintiffs lack standing for.

### i. Count Three: Injurious Falsehoods

In Count Three of the Complaint, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell made false and misleading allegations, actions, and insinuations about Joseph Cesare, and that Defendants published these disparaging falsehoods to prevent others from doing business with Joseph Cesare. (Doc. 31 at 35 ¶¶ 213–214). The basis for this claim is the April 9, 2014 letter regarding the Star Valley homeowners' complaints. *Id*. at ¶ 215. Defendants note that "the only injury identified is that residents, as a result [of the letter], 'planned to slow sales within the Star Valley development.'" (Doc. 38 at 7) (*citing* Doc. 31 ¶ 215). Thus, Defendants argue that "[t]he gravamen of this count is that the statements harmed Star Valley sales, and only the non-party LLC as the owner of the lots in Star Valley can recover damages

for lost sales." *Id.* Plaintiffs do not respond directly to Defendants' arguments regarding Count Three.

The Court finds that the injury asserted in this claim goes beyond harm solely to the LLC in terms of hampered sales of Star Valley lots. Count Three also generally alleges harm to Mr. Cesare personally due to the statements in the April 9, 2014 letter allegedly preventing others from engaging in business dealings with Mr. Cesare or his entities. Accordingly, this count alleges a distinct injury separate from the injury to the LLC, and the undersigned recommends that Plaintiffs do have standing to bring Count Three.

### ii.  Count Four: Tortious Business Interference

In Count Four, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell's actions, allegations, and insinuations have harmed Plaintiffs by interfering with Plaintiffs' existing and prospective contractual relations, including LGI's termination of the contract to purchase 572 lots at Star Valley. (Doc. 31 at 36 ¶¶ 221, 223, 225). As Defendants note, "[a]lthough the Complaint does not allege either Plaintiff was a party to the contract, Plaintiffs allege 'Mr. Cesare, in his personal capacity and through his business entities, also has a business expectancy of selling the remainder of the Star Valley development.'" (Doc. 38 at 8) (*citing* Complaint ¶ 226). Thus, Defendants contend, "[t]he only reasonable inference to be drawn from the allegations in the Complaint is that [Joseph Cesare's] expectancy consists entirely of SVA's ownership interest in the LLC." *Id.* Defendants conclude that "[t]he essence of this claim is that the LLC was injured by the termination of its contract with LGI, and only the non-party LLC can recover if it was damaged because LGI withdrew from that contract." *Id.*

Plaintiffs do not respond directly to Defendants' arguments regarding Count Four, and their non-response may be deemed consent to the Court granting Defendants' motion as to Count Four. *See* LRCiv 7.2(i).

The Court finds that because the injury asserted in this claim is LGI's termination

- 14 -

of the contract to purchase 572 lots at Star Valley, the claim properly belongs to the LLC as the master developer and owner of the Star Valley lots. Because the gravamen of this claim is injury to the LLC and Plaintiffs do not meet any of the criteria to bring a direct action, Plaintiffs do not have standing to bring Count Four.

### iii.  Count Six: 42 U.S.C. § 1983—Violation of Equal Protection and Count Eight: Violation of Equal Protection

In Count Six, Plaintiffs allege Defendants Bronson, Huckelberry, and Blackwell have treated Plaintiffs differently than Lennar and differently than other developers in Pima County by only withholding building permits for lots that Plaintiffs have an interest in, and by only pursuing abandonment and re-platting of the Star Valley blocks that Plaintiffs have an interest in. (Doc. 31 at 44–46). Plaintiffs also allege Defendants Bronson and Huckelberry have not withheld building permits for blocks owned by Lennar, nor have Defendants pursued the abandonment and re-platting of any other development in Pima County. *Id*. ¶¶ 283–285.   In Count Eight, Plaintiffs make the same allegations against Defendant Pima County. (Doc. 31 at 51–53).

Defendants contend that despite Plaintiffs' characterization of the blocks and lots as ones that Plaintiffs have an interest in, "this does not change the reality that the alleged similarly situated owners are the LLC and other developers." (Doc. 38 at 8). Defendants further contend that "the targeting of a particular LLC member does not affect the standing analysis, which is focused on injury rather than intent." *Id*. Thus, Defendants conclude that even if the LLC blocks and lots were being treated differently, any cause of action would belong to the LLC. *Id*. at 9. Plaintiffs do not respond directly to Defendants' arguments regarding Counts Six and Eight.

"In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002). "A shareholder does have standing, however, when he or she has been 'injured directly and independently from the corporation.'" *Id*. (*quoting Shell Petroleum, N.V. v. Graves*, 570 F.Supp. 58, 63 (N.D.

Cal. 1983), *aff'd*, 709 F.2d 593, 595 (9th Cir. 1983)). Here, Plaintiffs contend that the injury is Defendants' actions to only withhold building permits for lots that Plaintiffs have an interest in, and only attempting to abandon and re-plat blocks that Plaintiffs have an interest in. However, Plaintiffs' interest in the lots and blocks at Star Valley is by virtue of Joseph Cesare's membership in SVA, and SVA's membership in the LLC. While Plaintiffs contend that Defendants' actions are motivated by a desire to prevent Joseph Cesare from practicing his chosen profession, the wrong-doer's motivation to harm a particular shareholder is irrelevant when the injury is to the corporate rights of the shareholders, and thus injury to the corporation. *See Hidalgo*, 50 Ariz. at 183–84.

Accordingly, the Court finds that these claims properly belong to the LLC because (1) Defendants' alleged withholding of building permits for lots in Star Valley primarily affects the LLC and its ability to sell lots, and (2) Defendants' alleged plans to abandon and re-plat blocks 4, 7, and 8 of Star Valley primarily affects the LLC and its ownership of the lots. Thus, because the gravamen of the claims in Counts Six and Eight is injury to the LLC and Plaintiffs do not meet any of the criteria to bring a direct action, Plaintiffs do not have standing to bring Count Six or Count Eight.

### iv.   Count Ten: Negligence

In Count Ten, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell had a duty to Plaintiffs to: (1) only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County; (2) to only withhold building permits from Star Valley where there was statutory authority to do so; and (3) to not attempt to abandon and re-plat Star Valley without statutory authority and good cause. (Doc. 31 at 59 ¶¶ 367, 370, 373). Plaintiffs maintain that Defendants' breach of these duties constitutes negligence and/or negligence *per se*. *Id.* at 60 ¶ 376.

Defendants initially note that the first alleged duty identifies a distinct individual injury, which they address separately in the motion to dismiss under Rule 12(b)(6). (Doc. 38 at 9). Defendants then note that "the second and third alleged duties would be owed to

the LLC as the developer and beneficial owner of the Star Valley development, and Plaintiffs do not have standing to raise the LLC's claims of alleged breach of any such alleged duty." *Id.*

Plaintiffs do not respond directly to Defendants' arguments on Count Ten, and their non-response may be deemed consent to the Court granting Defendants' motion as to Count Ten. *See* LRCiv 7.2(i).

The Court finds Plaintiffs do have standing to assert a negligence claim for Defendants' alleged duty to only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County because this claim asserts an individual injury. However, the Court finds Plaintiffs lack standing to bring a negligence claim for the second and third alleged duties because (1) the injury for allegedly withholding building permits without statutory authority is an injury to the LLC, and (2) the injury for allegedly attempting to abandon and re-plat Star Valley without statutory authority also belongs to the LLC. Accordingly, because the second and third alleged duties assert injury to the LLC, and Plaintiffs do not meet any of the criteria to bring a direct action, Plaintiffs do not have standing to bring negligence claims for the second or third duties. Plaintiffs do, however, have standing for their negligence claim under the first alleged duty.

### v.  Count Twelve: Federal RICO and Count Thirteen: State RICO

In Count Twelve, Plaintiffs allege Defendants Pima County, Sharon Bronson, and Chuck Huckelberry have engaged in racketeering activity in violation of federal law by threatening to take actions, taking actions, and withholding actions to force Joseph Cesare and his business to pay for infrastructure that neither Mr. Cesare nor his business are responsible for. (Doc. 31 at 64–65 ¶¶ 414–416). In Count Thirteen, Plaintiffs make the same allegations regarding racketeering activity in violation of state law. (Doc. 31 at 63 ¶¶ 398–400).

Defendants contend that the gravamen of Plaintiffs' two RICO claims is injury to the LLC, and that the general rule is that "[s]hareholders or members typically lack

- 17 -

1    standing to assert RICO claims where their injury derives from the corporation's or

2    partnership's harm." (Doc. 38 at 9–10). Defendants further argue that while there may

3    have been some correspondence between Joseph Cesare and Pima County, the most

4    recent correspondence "clarifies that it is the LLC that is in default and it is the 'property

5    owner' that can cure the default by fulfilling its obligations." *Id*. at 10. Defendants

6    conclude that even if "Plaintiffs have been affected by the County's efforts to hold the

7    LLC accountable for its default, any effect is entirely by virtue of SVA's status as a

8    member of the LLC and Mr. Cesare's even more remote interest as a shareholder in SVA.

9    The LLC alone has a right of action for any damage incurred." *Id*.

10        Plaintiffs do not respond directly to Defendants' arguments on Counts Twelve and

11   Thirteen, and their non-response may be deemed consent to the Court granting

12   Defendants' motion as to these counts. *See* LRCiv 7.2(i).

13        In *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640 (9th Cir. 1988), the Ninth

14   Circuit noted that "[t]his Circuit apparently has not considered the issue of shareholder or

15   guarantor standing to assert RICO claims. Those circuits that have considered the issue,

16   however, are unanimous in holding that there is no shareholder standing to assert RICO

17   claims where the harm is derivative of harm to the corporation." In *Sparling*, the court

18   found that plaintiffs "must show either an injury distinct from that to other shareholders

19   or a special duty between [the defendant] and the [plaintiffs] if they are to have standing

20   to assert RICO claims based on injury to the corporation." *Id*. The court concluded that

> The wrong alleged is a fraud on the corporation. Because [plaintiffs] are the sole shareholders they cannot show an injury distinct from that to other shareholders. Nor was there a special relationship between the Sparlings and Hoffman which would create the kind of duty required. Thus, the court was correct in ruling that they had no standing as shareholders to assert a RICO claim.

*Id.* at 641.

        In the present case, Plaintiffs have not shown that they suffered an injury distinct

to that from other shareholders, nor is there a special relationship between Plaintiffs and

Defendants that would confer standing on Plaintiffs to bring the claims in Counts Twelve

and Thirteen. While Plaintiffs frame their claims as the Defendants taking actions and threatening to take actions to force Joseph Cesare and his business to pay for infrastructure improvements, the reality is that it is the LLC's responsibility as the master developer to pay for the road improvements. Any harm suffered by Plaintiffs is therefore derivative to the harm suffered by the LLC. Accordingly, because the gravamen of the claims in Counts Twelve and Thirteen is injury to the LLC, Plaintiffs do not have standing to bring Count Twelve or Count Thirteen.

### vi.   Count Fourteen: Violation of A.R.S. § 11-1604

A.R.S. § 11-1604(A) provides that "[a] county shall not base a licensing decision in whole or in part on a licensing requirement or condition that is not specifically authorized by statute, rule, ordinance or delegation agreement." In Count Fourteen, Plaintiffs allege Defendants Pima County, Sharon Bronson, and Chuck Huckelberry "have violated A.R.S. § 11-1604 by making the decision to withhold building permits as retaliation for Mr. Cesare's exercise of his constitutionally protected rights," (Doc. 31 at 66 ¶ 431), and making the decision to abandon and re-plat Star Valley, *Id.* at 67 ¶ 432. Defendants argue that Plaintiffs fail to specify an injury for this count, and further state that the actions taken or threatened to be taken were against the LLC, and thus this claim belongs solely to the LLC. (Doc. 31 at 11).

Plaintiffs do not respond directly to Defendants' arguments regarding Count Fourteen, and their non-response may be deemed consent to the Court granting Defendants' motion as to Count Fourteen. *See* LRCiv 7.2(i).

The Court finds that if Defendants withheld building permits or decided to abandon and re-plat Star Valley without specific authorization by statute, rule, ordinance, or delegation agreement, then the injury would belong to the LLC as the master developer and owner of the Star Valley lots. Thus, because the gravamen of this claim is injury to the LLC and Plaintiffs do not meet any of the criteria to bring a direct action, Plaintiffs do not have standing to bring Count Fourteen.

. . .

1

### C. Ripeness

2      Defendants contend that the Court lacks jurisdiction over any claims alleging

3  actual re-platting of the Star Valley development because no re-platting has occurred,

4  thus making any such claims unripe. (Doc. 38 at 11). Defendants further state that if any

5  re-platting had occurred, the cause of action would belong to the LLC. *Id.* Plaintiffs

6  contend that this is not a ripeness argument but a mootness argument, and that the

7  voluntary cessation of wrongdoing does not render a case moot. (Doc. 45 at 9).

8      Both parties rely on the case of *Western Oil & Gas Ass'n v. Sonoma Cnty.*, 905

9  F.2d 1287 (9th Cir. 1990) to argue their respective positions. There, the court explained

10 that:

11           The ripeness and mootness doctrines are based in part upon
             the Article III requirement that courts decide only cases or
12           controversies. An action is unripe when the issues are not
             sufficiently concrete for judicial resolution. An action is moot
13           when the issues presented are no longer 'live' or the parties
             lack a legally cognizable interest in the outcome. The ripeness
14           inquiry asks whether there yet is any need for the court to act,
             while the mootness inquiry asks whether there is anything left
15           for the court to do.

16 *Id.* at 1290 (internal quotations and citations omitted).

17      Regarding mootness, the Ninth Circuit noted that "actions are not moot when the

18 issues they concern are likely to recur," and "when a controversy is an on-going one, the

19 case has not become moot." *Id.* The Court also cited its earlier opinion in *Seay v.*

20 *McDonnell Douglas Corp.*, 533 F.2d 1126, 1130 (9th Cir. 1976), where it found that "a

21 defendant's voluntary cessation of wrongdoing did not render the case moot because it

22 provided no assurance that the alleged wrongdoing would not recur." *Western Oil*, 905

23 F.2d at 1290. Thus, "when the possibility of controversy remains, the case is not yet

24 moot." *Id.*

25      Here, Plaintiffs argue that although the re-platting of Star Valley has been

26 removed from the Board of Supervisor's agenda, it could be placed back on the agenda at

27 any time. (Doc. 45 at 12). Plaintiffs contend that this voluntary cessation of wrongdoing

28 "does ***not*** render the case moot because it provides no assurance that the alleged

- 20 -

1   wrongdoing will not recur," and further contend that "it is almost a certainty that it will
2   continue." *Id*. at 13. Defendants argue that "[t]he County does not contend that it will not
3   re-plat the subdivision, only that it has not yet done so. Therefore . . . this is an issue of
4   ripeness rather than mootness because any claims based on an actual re-plat have never
5   been ripe." (Doc. 48 at 5–6).

6        "In deciding whether an issue is ripe for review, the court 'evaluate[s] both the
7   fitness of the issues for judicial decision and the hardship to the parties of withholding
8   court consideration.'" *W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d at 1291 (*quoting
9   Abbott Laboratories v. Gardner*, 387 U.S 136, 148–49 (1967)). To determine fitness,
10  "[t]he court inquires whether the controversy generated is essentially legal in nature or
11  whether further factual amplication is necessary." *Id.* "To meet the hardship requirement,
12  a litigant must show that withholding review would result in direct and immediate
13  hardship and would entail more than possible financial loss." *Id.* (internal quotations and
14  citation omitted).

15       Defendants argue that any claims based on actual re-platting of Star Valley are not
16  ripe for judicial review because "facts yet to develop could change the nature of the
17  dispute." (Doc. 38 at 11). Defendants note that "as reflected in the January 20, 2015
18  Board of Supervisors' Meeting Minutes the Board has not yet re-platted Star Valley and
19  the staff recommendation to re-plat has been removed from the Board's agenda." *Id.*
20  (*citing* Ex. 5, item 10). In contrast, Plaintiffs argue that their claims are ripe for review
21  because "Plaintiffs' injury arises from the concrete nature of the steps that the County has
22  already taking [*sic*] towards the re-platting." (Doc. 45 at 12). Specifically, Plaintiffs
23  allege that the County's decision to abandon and re-plat Star Valley and the passing of
24  the ordinance empowering the County to take these actions has harmed Plaintiffs by
25  creating uncertainty around the future of Star Valley. *Id.* Thus, Plaintiffs claim that "[t]he
26  fact that the subdivision has not yet actually been abandoned is irrelevant to Plaintiffs'
27  claims," and that further factual amplication is not required for the Court to decide this
28  controversy. *Id.*

The parties make two different arguments on this issue: Defendants' argument is that any claims based on actual re-platting of Star Valley are not ripe for review. Plaintiffs' argument is that their injuries are based not in the actual re-platting, but in the steps taken by Defendants towards re-platting. The Court concludes that to the extent that any claims are based on the actual re-platting of Star Valley, those claims are not ripe for judicial review. First, the Board of Supervisors has removed the recommendation to abandon and re-plat Star Valley from its agenda. This item was removed from the agenda on January 20, 2015, and there is no evidence to suggest that it has been added back to the agenda. While this item could be added to the agenda for a future meeting, it also might not be. Second, Plaintiffs noted in a footnote in their Response to the Motion to Dismiss that the LLC has settled its lawsuit against Pima County. While the Court does not know the specifics of that settlement, it is entirely possible that the parties reached an agreement concerning the infrastructure improvements that would negate the need for the County to pursue abandonment and re-platting of Star Valley.

However, the Court has reviewed Plaintiff's Complaint and concludes that Counts Four through Fourteen are all based on Defendants' threat or attempt to abandon and re-plat the Star Valley blocks.[5] Thus, to the extent that these claims are not based on the actual re-platting of Star Valley but on the steps taken by Defendants toward re-platting, these claims are ripe for review and are not moot because the Court may properly determine whether Defendants' threatened actions caused harm to Plaintiffs.[6] However, because the injury alleged in Counts Four, Six, Eight, Ten,[7] Twelve, Thirteen, and Fourteen is uncertainty around the future of Star Valley, any causes of action based on

---

[5] Counts One, Two and Three are based on the statements in the April 9, 2014 letter, while Count Fifteen is for punitive damages. Counts Four through Fourteen are also based on additional grounds, including the April 9, 2014 letter and Defendants' decision to withhold building permits.

[6] For example, Plaintiffs allege that Defendants' threats to abandon and re-plat Star Valley caused LGI to terminate its contract with Star Valley.

[7] With the exception of the first duty alleged in Count Ten, which the undersigned recommends Plaintiffs do have standing to bring.

the harm created by this uncertainty properly belong to the LLC, and Plaintiffs lack standing to bring them.

### D. Conclusion

In sum, the undersigned recommends that Plaintiffs lack standing to bring Counts Four, Six, Eight, Ten,[8] Twelve, Thirteen and Fourteen because the claims properly belong to the non-party LLC. Furthermore, Plaintiffs have failed to show that they meet any of the criteria to establish standing for a direct action: there is no special relationship between Plaintiffs and Defendants separate from Plaintiffs' interest in the corporation, Defendants do not owe a duty to Plaintiffs for some reason other than their status as shareholders, and Plaintiffs have failed to allege a distinct injury to Plaintiffs separate from the injury to the LLC. *See Albers*, 201 Ariz. at 52. The Court finds Plaintiffs do have standing to bring Count Three and the first duty alleged in Count Ten, because these claims assert injuries to Mr. Cesare personally. Accordingly, the undersigned recommends that the District Court enter an order granting in part and denying in part Defendants' Motion to Dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

## III.   MOTION TO DISMISS: FAILURE TO STATE A CLAIM

Defendants argue Counts One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, and Fifteen should be dismissed for failure to state a claim upon which relief can be granted. (Doc. 38 at 12).[9]

### A. Legal Standard

Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss when the plaintiff fails to state a claim upon which relief can be granted. A complaint must contain

---

[8] With the exception of the first duty alleged in Count Ten, which the undersigned recommends Plaintiffs do have standing to bring.

[9] Defendants make this argument in the alternative for Counts Three, Six, and Eight in the event that the Court does not dismiss these counts based on lack of standing. Defendants also argue that if the Court dismisses Count Ten in part based on lack of standing, the remaining part of Count Ten should be dismissed based on failure to state a claim. Finally, Defendants note that they do not address whether Counts Four, Twelve, Thirteen, and Fourteen also fail to state a claim upon which relief may be granted because they argue Plaintiffs lack standing to bring these claims. *See* Doc. 38 at 12 n. 7.

a "short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed.R.Civ.P. 8(a). While Rule 8 does not demand factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A dismissal for failure to state a claim "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (internal citation omitted). However, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be plausible, allowing the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

"In adjudicating a Rule 12(b)(6) motion to dismiss, . . . a court does not resolve factual disputes between the parties on an undeveloped record. Instead, the issue is whether the pleading states a sufficient claim to warrant allowing the [plaintiffs] to attempt to prove their case." *Coleman v. City of Mesa*, 230 Ariz. 352, 363 (Sup. Ct. 2012); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)"), *overruling on other grounds recognized by Jack*

*Loumena v. Walter P. Hammon,* 2015 WL 7180679 (N.D. Cal. Nov. 16, 2015). Thus, Defendants' Motion to Dismiss does not require the Court to analyze the nature and extent of the transportation finance plan agreement between Plaintiffs and Defendants, if any, or what alleged obligations Plaintiffs or the LLC have in regard to offsite improvements. The Court only considers whether Plaintiffs have sufficiently stated their claims to justify allowing those claims to move forward.

The Court must view the complaint in the light most favorable to the nonmoving party, with every doubt resolved on his behalf, and with that party's allegations taken as true. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). Generally, the Court only considers the face of the complaint when deciding a motion under Rule 12(b)(6). *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Consideration of matters outside the pleading converts the Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, unless one of two exceptions are met:

> First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed.R.Evid. 201, a court may take judicial notice of matters of public record.

*Lee*, 250 F.3d at 688–89 (internal quotations and citations omitted); *see also Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."). The Court "may take judicial notice of court filings, as they are matters of public record, and '[i]t is also well established that a federal district court can take judicial notice of its own records.'" *Baca ex rel. Nominal Defendant Insight Enterprises, Inc. v. Crown*, 2010 WL 2812712, at *2 (D. Ariz. July 12, 2010) *aff'd sub nom. Baca v. Crown*, 458 F. App'x 694 (9th Cir. 2011) (citations omitted). "[While a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment . . . a court may not take judicial notice of a

1

2      fact that is subject to reasonable dispute." *Lee*, 250 F.3d at 689.

3                    **B.  Count One: Defamation**

4           In Count One, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck

5      Huckelberry, and Carla Blackwell defamed Joseph Cesare when Defendant Blackwell

6      published false allegations and insinuations about Mr. Cesare to members of the Star

7      Valley HOA. (Doc. 31 at 31). Citing the April 9, 2014 letter, Plaintiffs allege that

8      Defendant Blackwell stated that Mr. Cesare breached his fiduciary responsibility to the

9      HOA, that he lied and misrepresented facts to the HOA members, that his lies harmed the

10     HOA members, that he is negligent, that he deserves to be sued, that he has neglected his

11     legal and moral responsibilities, that he has acted in bad faith, and that he has not acted

12     properly to maintain the HOA's assets. *Id.* ¶ 186. Plaintiffs claim these allegations have

13     harmed Joseph Cesare's reputation and have deterred others from associating with him,

14     and that he has lost business expectancies and contractual relationships, which have

15     resulted in lost profits. *Id.* at 32–33 ¶¶ 197–198.

16          Defendants argue Plaintiffs have failed to state a defamation claim because

17     Defendant Blackwell's statements are protected by qualified immunity and Plaintiffs

18     "allege insufficient objective facts to plausibly infer a knowing or recklessly false

19     publication." (Doc. 38 at 13). Defendants further contend that the text of the April 9,

20     2014 letter makes clear that Defendant Blackwell had no malicious intent and that the

21     statements in the letter were made in response to Star Valley residents' comments. *Id.* at

22     14.

23          "One who publishes a false and defamatory communication concerning a private

24     person . . . is subject to liability if, but only if, he (a) knows that the statement is false and

25     it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently

26     in failing to ascertain them." *Dube v. Likins*, 216 Ariz. 406, 417 (Ct. App. 2007) (internal

27     quotations and citations omitted). "To be defamatory, a publication must be false and

28     must bring the defamed person into disrepute, contempt, or ridicule, or must impeach

       plaintiff's honesty, integrity, virtue, or reputation." *Id.* at 418 (internal quotations and

citations omitted). "Whether a statement is capable of defamatory meaning is a question of law for the court, but whether the meaning conveyed was defamatory is a question for the jury." *Id.* (citation omitted).

"Qualified immunity protects government officials from liability for acts within the scope of their public duties unless the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Chamberlain v. Mathis*, 151 Ariz. 551, 558 (Sup. Ct. 1986). "State officials are acting within their discretionary authority when they set policy or perform an act that inherently requires the exercise of their judgment or discretion." *Carroll v. Robinson*, 178 Ariz. 453, 457 (Ct. App. 1994).

To protect public officials from time-consuming trials, plaintiffs are required to establish proof of objective malice. *Chamberlain*, 151 Ariz. at 559.

> Thus, in a defamation case, qualified immunity will protect a public official if the facts establish that a reasonable person, with the information available to the official, could have formed a reasonable belief that the defamatory statement in question was true and that the publication was an appropriate means for serving the interests which justified the privilege.

*Id.* (internal quotations and citation omitted); *see also W. Technologies, Inc. v. Neal*, 159 Ariz. 433, 440 (Ct. App. 1988). Because Defendants in the present case are public officials, they are entitled to qualified immunity for their allegedly defamatory statements about Plaintiffs. Defendants "forfeit[] [t]his immunity if, and only if, [they] (1) acted outside the outer perimeter of [their] required or discretionary functions, or (2) acted with malice in that [they] knew [their] statements regarding plaintiffs were false or acted in reckless disregard of the truth." *Id.* at 560.

The Court finds that there are factual issues as to whether the statements contained in the April 9, 2014 letter were made in reckless disregard of the truth. The parties in this case dispute whether Plaintiffs and the LLC ever signed an agreement with the County regarding who would pay for construction of offsite infrastructure, and who was obligated to maintain the trail system. Plaintiffs contend that there is no transportation

finance plan in place between the County and the LLC, while the County maintains that there is an agreement and that it obligates the LLC to pay for the Camino Verde road extension and half the cost of a traffic signal. Given these disputed issues of fact, the Court cannot at this juncture resolve the factual issue of whether the alleged defamatory statements were knowingly false when made or were made in reckless disregard of the truth. Further, it is also plausible that the Defendants made the statements outside the scope of their discretionary authority. Accordingly, there is a disputed factual issue as to whether Defendants are entitled to qualified immunity on this claim, and the undersigned therefore recommends that the Motion to Dismiss be denied as to Count One.

## C. Count Two: False Light

In Count Two, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell have placed Joseph Cesare in a false light in the public eye because of the false allegations, actions, and insinuations Defendants published about Mr. Cesare. (Doc. 31 at 34 ¶¶ 206–207).

Defendants contend Plaintiffs have "fail[ed] to state a claim for false light invasion of privacy because the publicized matter concerned the life of a person in whom the recipients had a rightful interest and the information communicated was of public benefit." (Doc. 38 at 15). Defendants first argue that "Plaintiffs plead insufficient facts to plausibly infer that the statements in Carla Blackwell's letter were knowingly false or made with reckless disregard as to falsity or false innuendo." *Id.* at 16. Second, Defendants argue that the comments made in the April 9, 2014 letter were limited to Joseph Cesare's professional responsibilities as a board member and officer of the Star Valley HOA and his professional obligations to the Star Valley residents, and that "Mr. Cesare has no right of privacy in withholding information from the residents about how he executes his official duties in relation to the development." *Id.* at 17. Defendants further contend that "[t]he residents of Star Valley have a rightful interest in that information, and the County has a responsibility to respond to its constituents with information that is of public benefit." *Id.* Plaintiffs contend that Joseph Cesare is not a

public figure but "simply a businessman in Tucson." (Doc. 45 at 17).

False light invasion of privacy occurs when "the defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Hart v. Seven Resorts Inc*., 190 Ariz. 272, 280 (Ct. App. 1997). "[T]he plaintiff in a false light case must prove that the defendant published with knowledge of the falsity or reckless disregard for the truth." *Godbehere v. Phoenix Newspapers, Inc*., 162 Ariz. 335, 340 (Sup. Ct. 1989). "A defendant is not liable in a false light case unless the publication places the plaintiff in a false light highly offensive to a reasonable person." *Id.* "Thus, the plaintiff's subjective threshold of sensibility is not the measure, and 'trivial indignities' are not actionable." *Id.* "[T]o qualify as a false light invasion of privacy, the publication must involve a major misrepresentation of [the plaintiff's] character, history, activities, or beliefs." *Id.* at 341 (internal quotations and citation omitted).

Privacy rights are "absent or limited in connection with the life of a person in whom the public has a rightful interest, [or] where the information would be of public benefit." *Id*. at 343 (internal quotations and citation omitted). Invasion of privacy "does not exist if there has been consent to publication, or where the plaintiff has become a public character, and thereby waived his right to privacy, nor in the ordinary dissemination of news and events." *Reed v. Real Detective Pub. Co*., 63 Ariz. 294, 304 (Sup. Ct. 1945). While "a public figure may bring a false light claim for statements that relate to his private life and present[] his private life in a false light," the plaintiff is required to "show that the defendant acted with actual malice— that is, knowledge that [a statement] was false or reckless disregard of whether it was false or not." *Ultimate Creations, Inc. v. McMahon*, 515 F. Supp. 2d 1060, 1066 (D. Ariz. 2007) (internal quotations and citations omitted); *Godbehere*, 162 Ariz. at 343.

The Court finds that while Mr. Cesare is the president of the Star Valley HOA and a property developer in Pima County, there is insufficient evidence before the Court to determine whether this is enough to propel Mr. Cesare into the category of public figure.

Further, as noted above, the Court finds that there are factual issues as to whether the statements contained in the April 9, 2014 letter were made in reckless disregard of the truth. Given the parties' conflicting positions as to whether there was an agreement in place regarding financial responsibility for offsite infrastructure at Star Valley, there are disputed issues of fact that the Court cannot resolve on a motion to dismiss as to whether the Defendants in this matter knowingly or recklessly published false information about Plaintiffs that a reasonable person would find highly offensive. *See Hart*, 190 Ariz. at 280; *Godbehere*, 162 Ariz. 340. Accordingly, the undersigned recommends the District Court deny the Motion to Dismiss as to Count Two for failure to state a claim under Rule 12(b)(6).

### D. Count Three: Injurious Falsehoods

In Count Three Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell made false and misleading allegations, actions, and insinuations about Joseph Cesare, and that Defendants published these disparaging falsehoods to prevent others from doing business with Joseph Cesare. (Doc. 31 at 35 ¶¶ 213–214).

Defendants contend Plaintiffs lack standing to bring this claim, but "in an abundance of caution," also move to dismiss Count Three for failure to state claim because (1) Defendant Blackwell is entitled to qualified immunity for the statements in the April 9, 2014 letter, and (2) Plaintiffs have failed to plead sufficient facts to plausibly infer that the statements in the letter were knowingly false or made with reckless disregard as to their truth or falsity. (Doc. 38 at 17). Plaintiffs do not respond directly to Defendants' arguments regarding Count Three.

The undersigned recommends that Plaintiffs do have standing to bring Count Three, and further recommends that Plaintiffs have stated a plausible claim for relief for injurious falsehoods. As noted above in the Court's discussion of Count One, there are disputed issues of fact as to whether the statements made by Defendant Blackwell in the April 9, 2014 letter were made within the scope of her discretionary authority, and as to

whether the statements were knowingly false when made or made in reckless disregard of the truth. Thus, there is a factual dispute as to whether Defendants are entitled to qualified immunity on this count, and the Court cannot resolve these factual disputes on a motion to dismiss. Accordingly, the undersigned recommends that the District Court deny the Motion to Dismiss Count Three for failure to state a claim under Rule 12(b)(6).

### E.  Count Six: 42 U.S.C. § 1983—Violation of Equal Protection and Count Eight: Violation of Equal Protection

In Count Six Plaintiffs allege Defendants Bronson, Huckelberry, and Blackwell have treated Plaintiffs differently than Lennar and differently than other developers in Pima County by only withholding building permits for lots that Plaintiffs have an interest in, and by only pursuing abandonment and re-platting of the Star Valley blocks that Plaintiffs have an interest in. (Doc. 31 at 44–46). Plaintiffs also allege Defendants Bronson and Huckelberry have not withheld building permits for blocks owned by Lennar, nor have Defendants pursued the abandonment and re-platting of any other development in Pima County. *Id*. ¶¶ 283–285. In Count Eight, Plaintiffs make the same allegations against Defendant Pima County. (Doc. 31 at 51–53).

While the undersigned recommends that Plaintiffs lack standing to bring Counts Six and Eight because the injury alleged is harm to the LLC and its ability to sell lots, the undersigned will also consider whether these counts fail to state a claim under Rule 12(b)(6).

Plaintiffs allege the County has only denied building permits and pursued abandonment and re-platting of Blocks 4, 7, and 8 of Star Valley, which Plaintiffs have an ownership interest in. (Doc. 31 at 44 ¶¶ 277–79). Plaintiffs further allege that Blocks 2, 13, and 18 of Star Valley are owned solely by Lennar, and that these blocks have the same obligations to the County as the blocks Mr. Cesare has an interest in. *Id*. at ¶¶ 280–81. Plaintiffs contend that "[i]f Sharon Bronson and Chuck Huckelberry genuinely believe that obligations attached to Blocks 4, 7 and 8 (in which Mr. Cesare and SVA have an interest) dictate that the Master Developer and Mr. Cesare owe the County money,

then they must necessarily believe that Lennar also has those obligations in respect of Blocks 2, 13 and 18." *Id*. at ¶ 282. Plaintiffs further contend that other developments in Pima County are in default of agreements with the County and owe the County money, yet the County has not pursued the abandonment and re-platting of any other developments in Pima County. *Id*. at 45 ¶¶ 285–87. Plaintiffs therefore conclude that Defendants' reason for withholding building permits and re-platting Blocks 4, 7, and 8 is pretext because Plaintiffs and the LLC do not owe the County any money, and Defendants have no legitimate objective to justify treating Plaintiffs differently than Lennar and other developers. *Id*. at 46.

Defendants argue "that the decision whether and how to react to a default of an assurance agreement is the type of discretionary decision that requires managerial discretion and is an improper subject upon which to request judicial supervision via the Equal Protection Clause." (Doc. 38 at 19). Defendants explain that Blocks 4, 7, and 8 are subject to an assurance agreement that restricts sale or transfer of the lots. *Id*. at 19–20.

> The assurance agreements require that the subdivider (the LLC) not transfer lots without Pima County's prior written approval, require the subdivider to construct subdivision improvements within four years, and give the County the option to re-plat all or part of the land if the LLC fails to comply with the terms of the agreement.

*Id*. at 20 (*citing* Exhibit 6, PC Assurance Agreements at §§ 2.5, 2.11, and 2.13 of each agreement (pp. 2 & 3 (Block 4), 7 & 8 (Block 7), and 12 & 13 (Block 8))). Defendants contend that the LLC is in default of the assurance agreements for Blocks 4, 7, and 8, and that "[h]ow to respond to a default is a discretionary decision that calls for individualized assessment and treatment." *Id*. at 21. Defendants further argue that even if Plaintiffs had alleged a viable equal protection claim, Plaintiffs fail to identify a similarly situated class of developers or developments. *Id*.

While equal protection jurisprudence is typically focused on governmental classifications that affect some groups of citizens differently than others, the Supreme Court in *Village of Willowborok v. Olech*, 528 U.S. 562 (2000), "recognized that an equal

protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citations omitted). The *Engquist* Court noted that what was significant in *Olech* "was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed," and that "[t]here was no indication in *Olech* that the [government] was exercising discretionary authority based on subjective, individualized determinations." *Id.* at 602. Thus, the "differential treatment [in *Olech*] raised a concern of arbitrary classification, and [the Supreme Court] therefore required that the State provide a rational basis for it." *Id.* at 603.

The class-of-one doctrine does not apply to forms of state action that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.*

> In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* "[T]he existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are." *Towery v. Brewer*, 672 F.3d 650, 661 (9th Cir. 2012).

"To succeed on [a] 'class of one' claim, [the plaintiff] must demonstrate that the [defendant]: (1) intentionally (2) treated [plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). "A mere allegation of disparate impact is insufficient; there must also be factual allegations that the defendant was purposefully involved with a discriminatory intent." *Bison Contracting Co. v. Halikowski*, 2013 WL 6725850, at *4

1  (Ariz. Ct. App. Dec. 19, 2013).

2         Here, despite Plaintiffs' allegations that they are being treated differently than

3  Lennar and differently than other property developers in Pima County, the evidence

4  shows that Defendants have provided a rational basis for their actions and that

5  Defendants were exercising their discretionary authority. The Notice of Default and

6  Intent to Re-Plat clearly outlines the reasons for the County's decisions. (Doc. 38 Ex.

7  4).[10] The Notice explains that the LLC is in default of the assurance agreements for

8  Blocks 4, 7, and 8, and that the County intends to initiate its option to re-plat based on:

9  "(1) failure to complete subdivision improvements within the allotted time; (2) lack of

10 proper assurance agreements and transfer of title of blocks 4, 7, and 8 without County

11 authorization; (3) failure to comply with transportation financing and implementation

12 plan and associated conditions of rezoning; and (4) changes in surrounding conditions."

13 (Doc. 38 at 20) (*citing* Exhibit 4 at pp. 1–2). Attached to the Notice is Pima County

14 Board of Supervisors Policy F.53.4, which outlines the process for renewing assurance

15 agreements and what actions to take when an agreement is in default. The Policy explains

16 that:

17                 If in default, the County has the option to re-plat the
18                 subdivision or, in some cases, the option to re-confirm
                   compliance of the subdivision with current regulations and
19                 conditions . . . In many instances the failure to construct
                   improvements within the timeframe does not present an
20                 immediate problem since none of the subdivision lots have
                   been released from the assurance trust for sale to consumers
21                 and the surrounding conditions have not changed. However,
                   in partially constructed developments where some lots have
22                 been released and sold prior to completion of all
                   infrastructure, as well as in older subdivision with outdated
23                 traffic and hydrology studies or delinquent taxes that could
                   result in lots being conveyed out of the assurance trust
24                 without necessary infrastructure, it is in the best interest of the
                   Count to consider exercising its option to re-plat.

25 (Doc. 38 Ex. 4 at 5). The Policy further states that "[t]he Development Services Director
26

27 _____
   [10] The Court notes that this Notice is specifically addressed to the LLC and
28 Stewart Title & Trust of Tucson as the subdivider and trustee, and was copied to Joseph
   Cesare as Vice President of SVA, among others.

1    or designee may, at his sole discretion, initiate the County's option to re-plat or allow the

2    property owner to cure the default ," and once the re-platting option is initiated, the Board

3    of Supervisors will then consider a resolution to direct staff to begin the re-platting

4    process. *Id.* at 6–7. It is evident from the Notice that the County had rational reasons for

5    initiating the abandonment and re-platting process for Blocks 4, 7, and 8, and that Policy

6    F.53.4 authorizes the County to exercise its discretionary authority in determining what

7    actions to take when a property developer is in default of an assurance agreement.

8            Furthermore, as Defendants note, Plaintiffs have failed to identify a similarly

9    situated class of developers or developments. While Plaintiffs claim Blocks 2, 13, and 18

10   have not been identified for abandonment and re-platting, Plaintiffs "do not allege those

11   lots were transferred without authorization or that they remain subject to assurance

12   agreements under which improvements had not been completed." (Doc. 38 at 21).

13   Plaintiffs also fail to make specific allegations about any other developments in Pima

14   County where the same conditions were present as outlined in the Notice for Blocks 4, 7,

15   and 8, but where the County did not initiate abandonment and re-platting. Plaintiffs

16   attached a memorandum from the Pima County Development Services Director to

17   Defendant Huckelberry to their Response, which explains that Blocks 2, 10, 13, 15 and

18   18 have been released for sale to homebuyers. (Doc. 45–1 Ex. A at 3). Thus, Defendants

19   note, these blocks have been released from their assurance agreements and therefore

20   cannot be in default of the agreements. (Doc. 48 at 12). The memorandum also explains

21   that other Pima County properties in default of assurance agreements differ from Blocks

22   4, 7, and 8 because the property owners have not disputed that they must comply with

23   their obligations. (Doc. 45–1 Ex. A at 5) ("Of the projects requiring offsite improvements

24   where partial lot releases have occurred, the Star Valley development is the only project

25   with a currently confirmed default of the assurance agreement where the developer is

26   disputing its obligation to construct the required improvements."). The memorandum

27   further notes that in 2008, Mr. Cesare advised the County that Title Guaranty Agency

28   was no longer in business and he wished to assign Blocks 1, 3, 5, 6, 9, 11, 12, 14, 16, 17,

19, 21, and 25 to Stewart Title. (Doc. 45–1 Ex. A at 3). New assurance agreements for these blocks were made with Stewart Title, but Blocks 4, 7, and 8 were not included, and Blocks 4, 7, and 8 were conveyed to Stewart Title without the County's permission and without new assurance agreements. *Id.* In addition, a Board of Supervisors Memorandum explains that Blocks 4, 7, and 8 have no supporting infrastructure, and the County has not withheld building permits on other blocks within Star Valley that do have adequate infrastructure. (Doc. 45–1 Ex. C at 52). In sum, Plaintiffs' own evidence undermines their argument that they are being treated differently than similarly situated property developers, nor have Plaintiffs identified a similarly situated class of developers or developments. Further, Plaintiffs have not shown that Defendants lacked a rational basis for distinguishing Blocks 4, 7, and 8 from other lots in Pima County. *See Gerhart*, 637 F.3d at 1023 ("the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government action." (emphasis in original)).

In sum, Plaintiffs have not met their burden to succeed on their "class of one" claim because they have failed to demonstrate that Defendants: "(1) intentionally (2) treated [Plaintiffs] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart*, 637 F.3d at 1022. Plaintiffs' conclusory allegation that Defendants' actions were "arbitrary and capricious" is insufficient to show Defendants acted with a discriminatory intent. Further, Plaintiffs have failed to identify a similarly situated class of developers or developments. Finally, Defendants have provided rational reasons for initiating the abandonment and re-platting process for Blocks 4, 7, and 8, and for distinguishing Blocks 4, 7, and 8 from other lots in Pima County. Further, the undersigned finds that Defendants were exercising the discretionary authority afforded to them under Pima County Board of Supervisors Policy F.53.4 when they decided how to respond to the LLC's default of the assurance agreements. Accordingly, the undersigned recommends that the District Court dismiss Counts Six and Eight for failure to state a claim.

### F.  Count Seven: 42 U.S.C. § 1983—Violation of Substantive Due Process and Count Nine: Violation of Substantive Due Process

In Count Seven, Plaintiffs allege Defendants Bronson, Huckelberry, and Blackwell have unreasonably interfered with Plaintiffs' property and liberty interests and with Mr. Cesare's right to pursue his chosen occupation of property developer. (Doc. 31 at 47–48 ¶¶ 299–301). Plaintiffs claim the retaliatory acts of Defendants include defamatory and harmful statements about Mr. Cesare's honesty and integrity, the threat to abandon and re-plat Star Valley, the refusal to grant new building permits, the refusal to install a median cut at Star Valley Commercial Center, and the refusal to settle the LLC's lawsuit in Pima County Superior Court unless the Plaintiffs also abandon this lawsuit. *Id.* at 47 ¶ 298. Plaintiffs further state that Defendants' actions were not motivated "by legitimate regulatory concerns, but by political and personal retribution and retaliation." *Id.* at 49 ¶ 309. Plaintiffs further allege that "[t]he retaliatory acts of [Defendants] have directly resulted in the dramatic reduction in value of the Master Developer, because the Master Developer can no longer sell any lots at Star Valley." *Id.* at 48 ¶ 302. Thus, because Mr. Cesare owns SVA and SVA has a 50% ownership interest in the Master Developer (the LLC), Plaintiffs contend that the devaluation of the Master Developer "has directly interfered with the rights of Mr. Cesare and SVA to operate their business." *Id.* ¶¶ 303–304. In Count Nine, Plaintiffs make the same allegations against Defendant Pima County. *Id.* at 53–58.

Defendants argue Counts Seven and Nine should be dismissed as duplicative of Plaintiffs' First Amendment retaliation claim. (Doc. 38 at 22). Plaintiffs counter that Fed. R. Civ. P. 8(d)(2) "expressly permits a party to 'set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.'" (Doc. 45 at 26) (*citing* Fed.R.Civ.P. 8(d)(2)). Plaintiffs also cite Rule 8(d)(3), which allows a party to "state as many separate claims or defenses as it has, regardless of consistency," and  *Tempe Corp. Office Bldg. v. Arizona Funding Servs., Inc.*, 167 Ariz. 394, 398 (Ct. App. 1991), which noted that "[i]nconsistent pleading is permissible; a

party need not elect in advance of trial the theory upon which he will rely or the remedy he will seek." However, Defendants argue that despite these general pleading rules, binding case law prevents Plaintiffs from relying on substantive due process when the First Amendment would provide explicit protection for the type of retaliation Plaintiffs allege. (Doc. 48 at 13).[11]

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citation omitted). Here, Plaintiffs do not claim that their due process rights were violated under a specific amendment. Rather, Plaintiffs allege Defendants have unreasonably interfered with Plaintiffs' property and liberty interests and with Mr. Cesare's right to pursue his chosen occupation of property developer, and that these harms stem from Defendants' retaliation against Mr. Cesare for his political support of a Republican candidate in the 2012 Pima County elections. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," thus Plaintiffs' claim here "is markedly different from [the rights] recognized in this group of cases." *Id.*

In *Albright*, the Supreme Court held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273 (internal quotations and citation omitted). Thus, Defendants argue that because Plaintiffs state essentially the same claims in Count Five under the First Amendment as they do here in Counts Seven and Nine, and because the First Amendment provides explicit protection for the harms Plaintiffs allege, Counts Seven and Nine should be dismissed.

---

[11] Plaintiffs focus the remainder of their Response on the merits of Counts Seven and Nine, but Defendants do not attack the merits of these claims. Rather, Defendants' argument is based on Counts Seven and Nine being duplicative of Count Five.

Defendants cite cases from the First and Sixth Circuits, which, though not binding on this Court, are instructive. In *Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012), a wrongful termination case, the court noted that "'what would serve to raise defendant's actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, a specific constitutional violation.'" *Id.* at 548 (*quoting Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005)). Thus, the court concluded that "[b]ecause there is . . . 'an enumerated constitutional right . . . available as a source of protection' available in Handy-Clay's case, we conclude that she has failed to allege sufficient facts to support a substantive due process claim." *Id.* (*quoting Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999)). Similarly, in *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45–46 (1st Cir. 1992), the First Circuit noted that the refusal to issue building permits, even in alleged violation of state law or administrative procedures, does not ordinarily implicate substantive due process. There, the court found that:

> To the extent [plaintiff's] substantive due process claim is based on the alleged retaliation for his political views, it is coextensive with his First Amendment claim. Should that claim turn out to be viable in regard to the residential site permit, . . . there is obviously no need to enter the unchartered thicket of substantive due process to find an avenue for relief, and we decline to do so.

*Id.* at 46. However, in contrast to *Handy-Clay* and *Nestor Colon*, the Supreme Court of Arizona has held that "independent of any free speech issues, the Equal Protection and Due Process Clauses protect against government action that is arbitrary, irrational, or not reasonably related to furthering a legitimate state purpose." *Coleman*, 230 Ariz. at 362. In that case, the court reversed the lower court's granting of the defendants' motion to dismiss and allowed the plaintiffs' claims under the First Amendment as well as their claims for due process and equal protection to go forward. *Id.* at 363.

In sum, while *Coleman* may seem to weigh against dismissal of Counts Seven and Nine, *Coleman* was a state court case and the balance of U.S. Supreme Court and Circuit cases on this issue hold that where the First Amendment explicitly protects against the

harm Plaintiffs allege, then the claims must be brought under that specific amendment and not the more generalized notion of substantive due process. Further, in Counts Seven and Nine, the essence of the harm alleged by Plaintiffs is interference with the rights of Mr. Cesare and SVA to operate their business. However, in *Litmon v. Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014), the court noted that "the Supreme Court has never held that the right to pursue a profession is a *fundamental* right," and that "a restriction on the conduct of a profession will run afoul of substantive due process rights only if it is irrational." (internal quotations and citations omitted). Thus, the fact that Plaintiffs have no fundamental right to operate their business, combined with the fact that their substantive due process claims are based on alleged retaliation for Mr. Cesare's protected political speech and are thus coextensive with their First Amendment claim, weighs in favor of dismissing Counts Seven and Nine. Accordingly, the undersigned recommends that the Court dismiss these counts for failure to state a claim.

### G. Count Ten: Negligence

In Count Ten Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell had a duty to Plaintiffs to (1) only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County, (2) to only withhold building permits from Star Valley where there was statutory authority to do so, and (3) to not attempt to abandon and re-plat Star Valley without statutory authority and good cause. (Doc. 31 at 59 ¶¶ 367, 370, 373). Plaintiffs maintain that Defendants' breach of these duties constitutes negligence and/or negligence per se. *Id.* at 60 ¶ 376.

As noted in the Court's discussion of the motion to dismiss for lack of standing, the undersigned recommends that Plaintiffs do not have standing to bring a negligence claim for the second and third duties alleged. Accordingly, the undersigned now considers whether Plaintiffs have stated a negligence or negligence per se claim for Defendants' alleged violation of their duty to only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County.

Defendants argue that Plaintiffs' claim as to the first duty should be dismissed because "it merely reiterates Plaintiffs' defamation claim and suffers the same deficiencies." (Doc. 38 at 24). Defendants also contend that, despite Plaintiffs' citing statutes and policies, none of the cited authority creates a statutory standard of care as is required for a negligence per se claim. *Id.* at 25.

### i. Negligence Per Se

"As a general matter, a claim for negligence per se must be based on a statute enacted "'for the protection and safety of the public.'" *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 139 (Ct. App. 2014) (*quoting Good v. City of Glendale*, 150 Ariz. 218, 221 (Ct. App. 1986)), *review denied* Sept. 23, 2014. "Negligence per se applies when there has been a violation of a specific requirement of a law." *Hutto v. Francisco*, 210 Ariz. 88, 91 (Ct. App. 2005) (*quoting Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc*., 126 Ariz. 227, 229 (1980)); *Hurvitz v. Coburn*, 117 Ariz. 300, 304 (Ct. App. 1977) ("The violation of a regulation which fixes a standard of care is ordinarily negligence per se.)" Here, however, Plaintiffs fail to cite a specific law that Defendants have violated, or against which Defendants' conduct can be measured. *See id*. ("The statute or regulation must proscribe certain or specific acts to support a finding of negligence *per se*.") (internal quotations and citations omitted).

While Plaintiffs contend that Defendants have a duty to only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County, none of the statutes or policies cited by Plaintiffs specifically relate to Defendants' alleged duty to only provide truthful statements. For example, Plaintiffs cite generally to Article 2 of the Arizona Constitution. Plaintiffs also cite to A.R.S. § 11–1604, which concerns licensing decisions and does not apply to the first duty alleged in Count Ten, and A.R.S. § 11–223, which discusses the penalty for supervisor misconduct but does not list a specific duty to only provide truthful statements to the public. Plaintiffs also cite Pima County Board of Supervisors Policy No. C 2.1, which requires Pima County employees to act ethically when conducting county business. While this policy could

possibly be construed as generally requiring Defendants to only make truthful statements in the course of their employment with the County, "[s]uch a general standard does not support negligence per se. The statute or regulation must proscribe certain or specific acts to support a finding of . . . negligence per se." *Hutto*, 210 Ariz. at 91 (internal quotations and citations omitted); *Griffith*, 126 Ariz. at 229 (negligence per se applies only to "statutes which express rules of conduct in specific and concrete terms as opposed to general or abstract principles."). Further, the Board of Supervisors policy is not a statute enacted for the protection and safety of the public. *Steinberger*, 234 Ariz. at 139. Finally, the policy Plaintiffs allege Defendants violated is an internal policy of the Pima County Board of Supervisors, but Plaintiffs cite no authority that a violation of internal county policies supports a claim of negligence per se. *See Porter v. Arizona Dep't of Corr.*, 2012 WL 7180482, at *4 (D. Ariz. Sept. 17, 2012) (violations of internal policies and procedures may be evidence of negligence, but such evidence would be insufficient to establish the requisite standard of care for a negligence per se claim). Accordingly, negligence per se does not apply to the first duty alleged in Count Ten.

### ii.  Negligence

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 (Sup. Ct. 2007). Duty is a general obligation, recognized by law, requiring a defendant to conform to a particular standard of care to protect others from an unreasonable risk. *Id.*; *see also Vasquez v. State*, 220 Ariz. 304, 313–15 (Ct. App. 2008) (duty is determined as a matter of law and not based on specific facts in the case); *Hutto*, 210 Ariz. at 92 (duty requires the person subject to the duty to exercise reasonable care under the circumstances). Whether a duty exists is a threshold issue and is decided by the Court as a matter of law. *Gipson*, 214 Ariz. at 143. If a duty exists, the Court then considers whether the plaintiff has articulated a standard of care that was breached. The standard of

care is what the defendant must do or not do to satisfy the duty, and is dependent on the particular facts of the case. *Id.*

In this case, neither party presents argument as to whether Plaintiffs have adequately pleaded the required elements of negligence. Plaintiffs simply contend that they have alleged that Defendants "have very specific constitutional, statutory and regulatory obligations to treat Mr. Cesare fairly, and honestly without improper motive." (Doc. 45 at 31). Plaintiffs submit that this is enough for negligence per se, but do not address the elements of common law negligence. Similarly, Defendants first focus their argument on negligence per se, and then argue that "[r]egardless of the label Plaintiffs use, qualified immunity applies to Defendants' allegedly 'untruthful' statements under either a defamation or a negligence theory." (Doc. 38 at 25).

Because neither party specifically addresses the required elements of a common law negligence claim, and because Plaintiffs' complaint meets the Rule 8 pleading standard of a short and plain statement of the claim for Defendants' alleged violation of their duty to only provide truthful statements to the public regarding negotiations between Joseph Cesare and the County, the undersigned recommends that Defendants' motion to dismiss the first duty alleged in Count Ten be denied as to Plaintiffs' common law negligence claim.

**H. Count Eleven: Violation of Ariz. Const. Art. 2, § 6**

In Count Eleven, Plaintiffs contend Defendant Pima County is liable for the actions Defendants Bronson, Huckelberry, and Blackwell committed within the course and scope of their employment, specifically the actions Defendants allegedly took in retaliation against Joseph Cesare for his support of a Republican candidate in the 2012 Pima County elections. (Doc. 31 at 60–62). Plaintiffs further state that these "retaliatory acts caused harm because they had the effect of chilling the First Amendment right to free speech." *Id.* at 61 ¶ 387.

Defendants argue that this claim must fail because there is no Arizona equivalent of 28 U.S.C. § 1983, and no Arizona court has recognized a private right of action for

damages under Art. II, § 6 of the Arizona Constitution. (Doc. 38 at 26). Defendants urge the Court to decline to exercise its supplemental jurisdiction over this claim because it is a novel issue of state law, or, in the alternative, urge the Court to certify this question to the Arizona Supreme Court pursuant to A.R.S. § 12-1861. *Id.* at 26–27. Plaintiffs counter that the Supreme Court of the United States has awarded damages for violation of the First Amendment, that the Arizona Constitution provides even broader free speech protection than the First Amendment, and that because the Arizona Constitution also protects against individual action, no statute such as § 1983 is required to sue for damages. (Doc. 45 at 31-32).

Article 2, Section 6 of the Arizona Constitution provides that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." As Defendants note, § 1983 does not protect against violations of state law or state constitutional rights. *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981). As to whether there are any published cases creating a damages remedy for violations of state constitutional rights, this Court has noted that "[t]he existence of such claims is unresolved." *Diaz v. Arizona*, 2012 WL 1203692, at *5 (D. Ariz. Apr. 11, 2012) *aff'd*, 555 F. App'x 698 (9th Cir. 2014).

The two cases cited by Plaintiffs are inapplicable to the issues at hand. The first case, *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986), does not discuss state constitutional rights at all, but rather holds that damages based on the abstract value or importance of a federal constitutional right are not a permissible element of compensatory damages in § 1983 cases. *Id.* at 2545. The second case, *Mountain States Tel. & Tel. Co. v. Arizona Corp. Com'n*, 160 Ariz. 350 (Sup. Ct. 1989), notes that the Arizona Constitution grants "every Arizonan a broad free speech right," while the First Amendment of the United States Constitution only protects against government action. *Id.* at 354. However, *Mountain States* does not consider whether the Art. 2, Sec. 6 of the Arizona Constitution creates a private right of action for damages. In that case, the court held that the Corporation Commission's order requiring presubscription for 976

- 44 -

numbers[12] was void and unenforceable because it affected or impaired the right to speak freely under the Arizona Constitution. The court did not grant any other relief because the petitioners requested none. Thus, neither of the cases cited by Plaintiffs give support to the argument that Arizona recognizes a private right of action for damages under Art. II, § 6 of the Arizona Constitution. Accordingly, Plaintiffs have failed to show that their claims are based on cognizable legal theories, and the undersigned recommends Count Eleven should be dismissed. *See Navarro*, 250 F.3d at 732.

## I. Count Fifteen: Punitive Damages

In Count Fifteen, Plaintiffs allege Defendants Pima County, Sharon Bronson, Chuck Huckelberry, and Carla Blackwell committed wrongful acts against Plaintiffs to advance illegitimate interests, and that Defendants were motivated by spite, ill-will, malice, retaliation, and retribution. (Doc. 31 at 67 ¶¶ 435–436). Plaintiffs conclude that "Defendants acted so outrageously, oppressively, and intolerably to show the evil mind required for the imposition of punitive damages." *Id*. at 70 ¶ 457.

Defendants argue that punitive damages is not an independent legal cause of action and thus this claim should be dismissed for failure to present a claim based on a cognizable legal theory. (Doc. 38 at 27). Plaintiffs contend that they "did not include this count as an independent cause of action, but merely to separately assert the allegations necessary to support a claim for punitive damages." (Doc. 45 at 32).

Because Plaintiffs have not cited any authority suggesting they may bring an independent cause of action for punitive damages, and because Plaintiffs already request punitive damages in Count Five of the First Amended Complaint as well as in their demand for relief, the undersigned recommends dismissal of Count Fifteen.

. . .

---

[12] These numbers "provide customers with access to a 'dial-a-message network,' enabling a customer to obtain information, messages, or entertainment by calling a provider who offers the specific message. The customer obtains the desired message by calling the appropriate provider's telephone number on the ScoopLine, a service with a '976' prefix." *Mountain States*, 160 Ariz. at 352.

## IV.    RECOMMENDATION

The Magistrate Judge RECOMMENDS that the District Court GRANT IN PART AND DENY IN PART Defendants' Motion to Dismiss (Doc. 38) as follows:

1) Dismiss Counts Four, Six, Eight, Twelve, Thirteen, and Fourteen for lack of standing.

2) Dismiss Count Ten for lack of standing, but only as to the second and third duties alleged.

3) Dismiss Counts Six, Seven, Eight, Nine, Eleven, and Fifteen for failure to state a claim.

4) Allow Count Ten to go forward, but only as to the first duty alleged, and only on a theory of common law negligence.

5) Allow Counts One, Two, and Three to go forward, as well as Count Five, which was not at issue in the Motion to Dismiss.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 7th day of December, 2015.

Eric J. Markovich
United States Magistrate Judge